Linda H. WILLIAMS, Appellant,

v.

WAL–MART STORES, INC., Appellee.

No. 2004–SC–000080–DG.

Supreme Court of Kentucky.

Nov. 23, 2005.

Rehearing Denied March 23, 2006.

Lee Huddleston, Huddleston & Huddleston, Bowling Green, Counsel for Appellant.

Elizabeth U. Mendel, Kathryn A. Quesenberry, Erin M. Roark, Woodward, Hobson & Fulton, Louisville, Counsel for Appellee.

Opinion of the Court by Justice ROACH.

## I. INTRODUCTION

Linda Williams ("Williams") brought suit against Wal–Mart Stores, Inc. ("Wal–Mart") and two individual Wal–Mart management employees. Williams alleged that she had been subjected to unlawful age discrimination, disability discrimination, and retaliation in violation of KRS Chapter 344. The case proceeded to trial and the sole claim presented to the jury was whether Williams had been subjected to age discrimination by Wal–Mart. The jury determined that Williams had been the victim of unlawful age discrimination and awarded her damages of $539,237.00. Those damages consisted of $97,237.00 for lost past and future wages, $192,000.00 for humiliation, embarrassment and mental distress, and $250,000.00 in punitive damages.[1] A divided panel of the Court of Appeals held that Williams had failed to present evidence to satisfy the elements of an age discrimination claim and reversed the trial court. This Court granted discretionary review to consider whether the jury's verdict against Wal–Mart for age discrimination should be upheld. Having determined that Williams failed to prove she was the victim of unlawful age discrimination, we affirm the decision of the Court of Appeals.

## II. BACKGROUND

■ "On appellate review, when determining whether the trial court erred in denying a motion for directed verdict, the non-moving party's evidence is taken as true and the non-moving party is entitled to all reasonable inferences that may be made from the evidence." *Kentucky Dep't of Corrs. v. McCullough*, 123 S.W.3d 130, 134 (Ky.2003). We will state the facts in that light.

Williams was hired by Wal–Mart in July of 1986, and worked as a cashier there until her job separation on October 7, 1995. She was fifty-six years of age at the time of her separation. Because of a medical condition, it was necessary for Williams to take medicine at various times throughout her workday. Her doctor also recommended that her prescription be taken with sodium-free water. Initially, Williams brought sodium-free water from home and left it in the employee's lounge. However, because other employees sometimes drank the water or threw it away, Williams decided it would be simpler to purchase water at the store as she needed it.

The sodium-free water was stocked at the front of the store, near the cash registers. On October 5, 1995, Williams took and drank a gallon of water without paying for it. Williams testified that she believed customer service manager Jennie Gray had given her permission to take the water

---

1. Subsequent to the trial of this matter, we held that (i) punitive damages are not an available remedy under KRS Chapter 344, *Kentucky Dep't of Corrs. v. McCullough*, 123 S.W.3d 130, 138 (Ky.2003), and (ii) the trial court rather than the jury should determine the appropriateness and amount of front pay. *See Brooks v. Lexington–Fayette Urban County Hous. Auth.*, 132 S.W.3d 790, 806 (Ky.2004).

and pay for it at the end of her workday. At the end of her shift that day, Williams paid 58 cents for the water.

On October 6, 1995, Williams took another gallon of water without paying for it. Other employees witnessed Williams's actions and reported her conduct to Joyce Bosse, an assistant manager at the store. Bosse called Joe Medina, an area loss-prevention supervisor to report the incident. Medina instructed her to monitor the situation. At the end of Williams's shift that day, she left the unfinished water on top of the refrigerator in the employee lounge and left the store without paying for it.

On October 7, 1995, Williams finished the water from the previous day and discarded the container. Williams then took another gallon of water. Bosse called Medina again for further instructions as to how she should handle the situation. Medina told Bosse that if Williams could not produce receipts for the water, she was to be terminated. At this point, a meeting was held between Wal–Mart managers and Williams. During the meeting, which Williams later described as a forty-five minute interrogation, the managers repeatedly accused her of stealing the water. Williams contended that she did not steal the water, but was unable to produce receipts for its purchase. During this meeting, Williams resigned.[2] As she left the store, Williams paid for the two gallons of water. Additional facts relevant to the appropriate legal inquiry will be set forth below.

## III. Analysis

### A. Age Discrimination Claim

KRS 344.040(1) states that it is unlawful for an employer to "fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual ... because of the individual's ... age." This Court has consistently interpreted the civil rights provisions of KRS Chapter 344 consistent with the applicable federal anti-discrimination laws. *See Brooks v. Lexington–Fayette Urban County Hous. Auth.,* 132 S.W.3d 790, 802 (Ky. 2004); *Howard Baer, Inc. v. Schave,* 127 S.W.3d 589, 592 (Ky.2003); *Bank One, Kentucky, N.A. v. Murphy,* 52 S.W.3d 540, 544 (Ky.2001); *Ammerman v. Bd. of Educ. of Nicholas County,* 30 S.W.3d 793, 797–98 (Ky.2000). Age discrimination cases under the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634, are analyzed under the same framework as employment discrimination cases under Title VII. *Grosjean v. First Energy Corp.,* 349 F.3d 332, 335 (6th Cir.2003).

### 1. The Prima Facie Case

There are two paths for a plaintiff seeking to establish an age discrimination case. One path consists of direct evidence of discriminatory animus. Absent direct evidence of discrimination, Plaintiff must satisfy the burden-shifting test of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The reasoning behind the *McDonnell Douglas* burden shifting approach is to allow a victim of discrimination to establish a case through inferential and circumstantial proof. As Justice O'Connor has noted, "the entire purpose of the *McDonnell Douglas* prima facie case is to compensate for the fact that direct evidence of intentional discrimination is hard to come by." *Price Waterhouse v. Hopkins,* 490

---

**2.** The evidence placed in the most favorable light to Williams demonstrates that she was forced to resign by Wal–Mart. Williams testified that she was threatened with jail if she did not voluntarily resign.

U.S. 228, 271, 109 S.Ct. 1775, 1802, 104 L.Ed.2d 268 (1989) (O'Connor, J. concurring); *see also Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 622, 83 L.Ed.2d 523 (1985) ("The shifting burdens of proof set forth in *McDonnell Douglas* are designed to assure that the 'plaintiff [has] his day in court despite the unavailability of direct evidence.' "). If a plaintiff attempts to prove its case using the *McDonnell Douglas* framework, then the plaintiff is not required to introduce direct evidence of discrimination. *Kline v. Tennessee Valley Auth.,* 128 F.3d 337, 349 (6th Cir.1997).

■ Under the *McDonnell Douglas* framework a plaintiff can establish a prima facie case of age discrimination by proving that he or she: (1) was a member of a protected class, (2) was discharged, (3) was qualified for the position from which they were discharged, and (4) was replaced by a person outside the protected class. *Kline,* 128 F.3d at 349. In age discrimination cases the fourth element is modified to require replacement not by a person outside the protected class, but replacement by a significantly younger person. *O'Connor v. Consol. Coin Caterers Corp.,* 517 U.S. 308, 313, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996). In the present matter, there is no dispute that Williams proved the first three elements of her case. However, Wal–Mart asserts that Williams did not establish that she was replaced by a significantly younger person, thus failing to satisfy the fourth requirement.

■ Specifically, Wal–Mart claims that Williams was not replaced but that her duties were redistributed among existing employees. *See Grosjean,* 349 F.3d at 336 ("A person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties." (internal quotation marks and citations omitted)). Williams counters that assertion with documentary evidence produced by Wal–Mart in discovery, which demonstrates that every person hired after Williams's separation was younger than she was. The fourth prong, however, requires replacement by an individual who is significantly younger than the terminated employee. There have been numerous cases in the federal courts discussing how many years younger a replacement has to be in order to satisfy the significantly-younger requirement. *See Grosjean,* 349 F.3d at 338–340 (discussing the numerous approaches to the issue by the federal circuit courts of appeals and concluding that an age difference of less than six years is not significant).

We do not need to settle that precise issue today. The exhibit introduced by the plaintiff demonstrates that the next sixteen hires made by Wal–Mart after Williams's separation consisted of individuals at least eight years younger than Williams. In fact, all but three were under forty. Furthermore, Wal–Mart's reliance on *Grosjean* is misplaced as the case actually supports Williams's position. In *Grosjean,* an existing employee temporarily assumed the plaintiff's job responsibilities after he was reassigned, and the position was eventually filled by another individual. The court concluded that the temporary replacement was not the relevant replacement for purposes of plaintiff's age discrimination claim, focusing instead on the individual hired to fill the position permanently. In the present matter, even if Wal–Mart established that the cashier duties of Williams were temporarily absorbed by other employees, the company cannot overcome the fact that

its next sixteen hires were substantially younger. Quite simply, when the evidence at trial is viewed in the light most favorable to Williams, it establishes that she was replaced by at least one of these substantially younger individuals.

## 2. The Legitimate, Nondiscriminatory Reason for Termination

■ Once the plaintiff has established a prima facie case, the burden shifts to the employer to articulate a "legitimate nondiscriminatory reason" for the termination decision. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981)) (internal quotation marks omitted). The defendant bears only the burden of production and this involves no credibility assessments. *Id.*

■ Wal–Mart presented evidence at trial that it had a strict policy against employees taking merchandise without first paying for it and that a violation of the policy resulted in immediate termination. Additionally, Wal–Mart did not allow employees to purchase merchandise while "on the clock." Therefore, Wal–Mart's employees are only permitted to obtain and pay for merchandise at the beginning or end of their shifts or during lunch breaks. Wal–Mart contends that Williams was fired for violating these policies.

## 3. Plaintiff's Showing of Pretext

■ After a defendant has provided a legitimate, nondiscriminatory reason for the termination, the *McDonnell Douglas* framework disappears. *Reeves*, 530 U.S. at 142, 120 S.Ct. at 2106. At this point, the plaintiff must persuade the trier of fact, by a preponderance of the evidence, that the defendant unlawfully discriminated against her. *Id.* In order to prevail, the plaintiff must typically demonstrate that the employer's stated reason for the termination was merely a pretext, masking the discriminatory motive. *Id.* In other words, a plaintiff is required to "produce sufficient evidence from which the jury [could] reasonably reject the employer's explanation." *Manzer v. Diamond Shamrock Chems., Co.*, 29 F.3d 1078, 1083 (6th Cir.1994). In *Manzer*, the court listed three methods for establishing pretext: (1) the proffered reasons are false; (2) the proffered reasons did not actually motivate the decision; and (3) the plaintiff could show that the reasons given were insufficient to motivate the decision. *Id.* at 1084.

The Court of Appeals concluded that Williams did not establish pretext and therefore her age discrimination claim failed. We disagree, and believe that Williams made a *weak* showing of pretext. Again, the evidence must be considered in the light most favorable to Williams, and we discuss the following facts with that standard in mind.

Williams testified that on October 5, she received permission from a manager to pay for the water at the end of her shift. There was also evidence that management employees watched Williams pay for the empty jug of water at the end of her shift on October 5 but said nothing. Williams argues that if there was truly a zero-tolerance policy then she would have been discharged or confronted on that day. In addition, she claims that she was not afforded the opportunity to pay for the water on October 7 and that she had planned to pay for both jugs at the end of the shift, just as she had done two days earlier. Williams also argues that the extreme measures employed by Wal–Mart management employees at the meeting where she was confronted with the charges demon-

strates pretext. She contends that Wal-Mart's efforts to coerce a confession and force her resignation by threatening criminal prosecution are further evidence of pretext. Wal-Mart responds that no manager gave Williams permission to pay for the water at the end of her shift and that she had every opportunity before the shift and during her lunch break to pay for the water, but she failed to do so. Nevertheless, Williams has produced sufficient evidence such that a jury might reasonably reject Wal-Mart's explanation for her dismissal. We emphasize that we are not to make an independent judgment of the evidence and, with this standard in mind, we believe Williams established a weak showing of pretext.

### 4. Beyond a Showing of Pretext

Until the United States Supreme Court issued *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), federal courts were split in characterizing the impact of a showing of pretext by the plaintiff. Three approaches were developed by the Circuits—the Sixth Circuit described these approaches in the following way:

> "Pretext only" is the least stringent of the three approaches. It simply requires that a plaintiff prove that the defendant's proffered reason is pretextual. Once this is proven, the plaintiff is entitled to judgment as a matter of law.

> The moderate approach to pretext analysis is dubbed the "permissive pretext only" standard. Under this method, if the plaintiff establishes that the defendant's reasons are pretextual the trier of fact is permitted, but not required, to enter judgment for the plaintiff. The technique allows a permissive rather than a mandatory determination favoring the plaintiff.

Under the "pretext plus" strand of analysis, a plaintiff acquires an additional burden. The plaintiff must not only demonstrate that the employer's asserted reasons were pretextual, but the plaintiff also must introduce additional evidence of discrimination. Only with an indirect and direct showing of discrimination is the plaintiff entitled to judgment as a matter of law. The pretext plus approach was the position of a majority of the circuit courts prior to 1993.

*Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 343 (6th Cir.1997) (citations omitted).

In *St. Mary's Honor Center*, the Supreme Court rejected the "pretext plus" and "pretext only" approaches in favor of the "permissive pretext only" standard and held that it was permissible, but not mandatory, for the trier of fact to make an ultimate finding of intentional discrimination once the plaintiff has established pretext. *St. Mary's Honor Ctr.*, 509 U.S. at 511, 113 S.Ct. at 2742. This issue was further analyzed by the United States Supreme Court in *Reeves*. In *Reeves*, the court of appeals had assumed that a prima facie case of discrimination combined with sufficient evidence of pretext was "insufficient as a matter of law to sustain a jury's finding of intentional discrimination." *Reeves*, 530 U.S. at 146, 120 S.Ct. at 2108. The Supreme Court explained the court of appeals had misunderstood *St. Mary's Honor Center* and explained its decision in that case:

> There we held that the factfinder's rejection of the employer's legitimate, nondiscriminatory reason for its action does not *compel* judgment for the plaintiff. The ultimate question is whether the employer intentionally discriminated, and proof that "the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily estab-

lish that the plaintiff's proffered reason ... is correct." In other words, "[i]t is not enough ... to *dis* believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination."

In reaching this conclusion, however, we reasoned that it is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation.

*Id.* at 146–47, 120 S.Ct. at 2108 (citations omitted) (alterations in original). This Court has correctly construed this aspect of *Reeves*, explaining: "In other words, a plaintiff's *prima facie* case plus proof of a pretext *may* constitute sufficient evidence to survive a motion for a directed verdict." *Kentucky Dep't of Corrs. v. McCullough*, 123 S.W.3d 130, 134 (Ky.2003) (second emphasis added).

The Supreme Court in *Reeves*, after discussing the impact of the employer's false explanation for the termination, went on to hold:

> Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.
>
> This is not to say that such a showing by the plaintiff will *always* be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to

> whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred. To hold otherwise would be effectively to insulate an entire category of employment discrimination cases from review under Rule 50, and we have reiterated that trial courts should not treat discrimination differently from other ultimate questions of fact.
>
> Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.

*Reeves*, 530 U.S. at 148–49, 120 S.Ct. at 2109 (internal citations and quotation marks omitted).

In *Reeves*, the Court concluded that the plaintiff had established a prima facie case and had "made a substantial showing" that the employer's explanation was false. *Id.* at 142–44, 120 S.Ct. at 2106–07. However, in the present matter Williams has, at best, "*created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.*" *Id.* at 148, 120 S.Ct. at 2109 (emphasis added).

A review of the record demonstrates that the trial court misunderstood its role when addressing Wal–Mart's motion for a directed verdict. At the conference to address the motion, the trial court characterized Williams's claim as "a very weak case" and appeared to focus exclusively on whether she had established a prima facie case under the *McDonnell Douglas* framework. The trial court explained that "it is

so easy to make a prima facie case in here, here we are stuck trying this case on age discrimination." The appropriate inquiry, however, was not only whether a prima facie case had been established, but was instead whether there was sufficient evidence to permit a rational trier of fact to conclude that Wal–Mart had unlawfully discriminated against Williams because of her age. We conclude that there was not.

■■■ The record contains two important pieces of uncontroverted evidence that no discrimination occurred. First, Wal–Mart presented evidence of two employees under the age of forty who were fired for substantially the same reason as Williams, one for drinking an Icee and the other for drinking a soft drink, neither of which had been paid for. Second, and most important, the sole decisionmaker responsible for terminating Williams did not know how old she was.

It was undisputed that Joe Medina, the off-site loss prevention supervisor, made the decision to fire Williams. Additionally, there was no evidence offered that Medina had any knowledge of Williams's age. Medina's unrefuted testimony was, that at the time he made the decision to terminate Williams, he (i) had never seen her, (ii) did not know her age, and (iii) had never been told her age.

A thorough review of the trial record demonstrates that Williams's theory of the case embraced the notion that Medina was the sole decisionmaker. Notably, Medina responded in the affirmative to the following questions from Williams's counsel: (i) "And you were the one that made the decision to fire Linda Williams?"; and (ii) "Really, you were the man to make the decision?" Additionally, in his closing argument, Williams's lawyer argued that Medina was the "culprit" and that "he made the call." He further argued that the local Wal–Mart management staff were just following orders in dealing with Williams.

Considered together, and despite Williams's weak showing of pretext, these facts show that Medina was solely responsible for Williams's termination *and* that he did not know her age at the time he made that decision. Furthermore, there exists no ˙evidence in the record which contradicts these conclusions. Consequently, we conclude that this case is one of those "instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Reeves*, 530 U.S. at 148, 120 S.Ct. at 2109.[3]

## B. Designation of the Record

Finally, Williams argues that the Court of Appeals erred in allowing Wal–Mart's appeal to proceed despite its failure to designate the record for appeal in accordance with CR 75.01. In support of this position, Williams cites a long line of now inapplicable Kentucky appellate cases de-

---

**3.** The opinion of the Court of Appeals focused on Medina's role as the sole decisionmaker and concluded that his lack of knowledge of Williams's age precluded any finding of pretext. While it would typically be appropriate to focus on the decisionmaker at that stage of the analysis, this case demands a different approach. Here there was specific evidence supporting Williams's theory of pretext, namely that she had been given permission, or at least tacit approval, for the very conduct which eventually served as the basis for her dismissal. Her theory is even more credible given the fact that, although Wal–Mart contends Williams was in violation of company policy as early as October 5, she was not fired immediately for her infraction. In the end, the peculiar facts of this case foreclose a finding that Williams failed to demonstrate pretext.

manding strict compliance with CR 75.01.[4] In many of these cases parties suffered a dismissal of their claims for seemingly minor deviations from the rule.

 Williams, however, ignores the fundamental change in our approach to problems of noncompliance that we explained in *Ready v. Jamison*, 705 S.W.2d 479 (Ky.1986). In that case, which was premised on a change to CR 73.02(2), we adopted a standard of substantial compliance. We stated, "[w]hile dismissal still may be appropriate where the breach of the rule and the harm to the opponent is sufficiently serious, under CR 73.02(2) the appellate court is charged with the burden of deciding the appropriate sanction on a case by case basis." *Id.* at 482. Accordingly, we review the Court of Appeals' denial of Williams's motion to dismiss under an abuse of discretion standard.

 Williams has not alleged that she was at all prejudiced by Wal-Mart's failure to designate the record for appeal. Nor has she demonstrated that Wal-Mart's breach was sufficiently serious such that dismissal was warranted. In short, she has not provided any reason, aside from her plea that we return to a regime of strict compliance, justifying this claim of error. Consequently, we find that the Court of Appeals did not abuse its discretion in denying her motion to dismiss Wal-Mart's appeal.

## IV. CONCLUSION

We are not called on to judge the wisdom of Wal-Mart's decision to terminate Williams. Rather, our duty is to determine whether there was sufficient evidence to support the jury's finding of age discrimination. For the foregoing reasons, we conclude that no rational jury could have found that Williams was subjected to unlawful age discrimination. Therefore we affirm the decision of the Court of Appeals.

All concur.

---

4. In addition to the pre-*Ready* decisions on which Williams relies, she also cites *Commonwealth v. Roberts*, 122 S.W.3d 524 (Ky.2003), in support of her position. In *Roberts*, this Court unanimously dismissed the appeal of a criminal defendant who had failed to comply with a Court of Appeals order that he provide transcripts of lower court proceedings designated under CR 75.01. Despite Williams's suggestion to the contrary, and notwithstanding our dismissal of the defendant's appeal, this case is in no way a return to that earlier line of decisions.