Joseph E. FLOCK, Appellant,

v.

BROWN–FORMAN CORPORATION,
Appellee.

No. 2009–CA–001184–MR.

Court of Appeals of Kentucky.

July 2, 2010.

Discretionary Review Denied by
Supreme Court Aug. 17, 2011.

Philip C. Kimball and Samuel G. Hayward (argued), Louisville, KY, for appellant.

Charles J. Cronan, IV, Shannon Antle Hamilton and Karen M. Paulin (argued), Louisville, KY, for appellee.

Before ACREE, COMBS, and WINE, Judges.

## OPINION

WINE, Judge:

Joseph E. Flock appeals from a summary judgment by the Jefferson Circuit Court which dismissed his employment discrimination and retaliation claims against Brown–Forman Corporation ("Brown–Forman"). He argues that he presented sufficient evidence to raise genuine issues of material fact that Brown–Forman discriminated against him based on his age and gender, and that it retaliated against him after he filed these claims. We disagree with the trial court that Flock

failed to establish a *prima facie* case on his age discrimination claim. However, we agree with the trial court that Flock failed to present sufficient evidence to rebut Brown–Forman's stated reasons for demoting him. We further agree with the trial court that Flock failed to establish *prima facie* cases for his gender discrimination and retaliation claims. Hence, we affirm the trial court's summary judgment dismissing Flock's claims.

**Facts and Procedural History**

Flock began working for Brown–Forman in 1969. Over the course of his career, he held several different positions and eventually achieved the title of Vice President of the Vista Markets Division. In that position, Flock oversaw Brown–Forman's sales in the Latin American and Caribbean markets, which included Puerto Rico. His supervisor was Donald Berg. Flock was fifty-seven years old in 2005.

In May of 2005, Berg's assistant, Becky Maier, received $485,000 worth of invoices from Puerto Rico. All of the invoices predated April 31, 2005, the end of the company's fiscal year. Maier determined that $313,000 of the invoices were attributable to broker commissions. This left $172,000 which was incorrectly classified. In passing, Maier asked Flock how she should account for the $172,000. Flock replied that Maier should classify the amount as cost of goods sold in order to avoid a budget overrun. Flock admits that this advice was improper. However, Berg had previously criticized him for cost overruns in the Vista Markets division, and Flock stated that he wanted to avoid another confrontation over the issue.

Subsequently, the division controller, Lynn Wilkerson, made an official accounting entry correctly listing the $172,000 as attributable to broker commissions/special promotions. Wilkerson later changed the entry so that it inaccurately reflected the amount was for cost of goods sold. Wilkerson stated that she made this change at Maier's direction, but she did not know of Flock's involvement. Both Maier and Wilkerson admitted that they knew the classification was wrong at the time it was made.

The misclassification came to light in October 2005. Following an investigation, Brown–Forman concluded that Flock, Maier, and Wilkerson had each violated a provision of the company's code of conduct which prohibits the recording of false or misleading entries in accounting records. Flock was demoted to Director of Wine and Spirits Pricing for the Americas. In addition, Brown–Forman lowered his pay grade two levels, lowered his bonus grade one level, and gave him an "achieves most" rating on his yearly evaluation. Flock's former position was split into two new jobs after his demotion. Marshall Farrar took one of the new positions and Patrick Moran took the other.

Flock took issue with the punishment meted out by Brown–Forman. He noted that his role in the misclassification was limited to one instance of giving incorrect advice to Maier. He also noted that he had no direct role in making the accounting entries and was not a direct supervisor of either Maier or Wilkerson. In contrast, he noted that Maier and particularly Wilkerson were directly involved in the misclassification, but received lesser punishments. He also reported other prior examples of infractions of the company's code of conduct which were not investigated or punished. Brown–Forman took the position that Flock's punishment should be more severe since he was in a higher position of authority and his actions implicated the company in a violation of the Sarbanes–Oxley Act. The company also rejected Flock's allegations of other misconduct, stating that Flock's examples

could not be substantiated, did not rise to a conduct-code violation, or had been previously resolved.

Flock filed a complaint against Brown–Forman on April 25, 2006, alleging age discrimination, reverse-gender discrimination, and retaliation. Flock continued to work for Brown–Forman until the end of 2008. He complains that, after he filed the complaint, Brown–Forman marginalized him, arbitrarily removed duties from his position, subjected him to greater supervisory scrutiny, and that other Brown–Forman employees did not support him in his position.

Following an extended period of discovery, Brown–Forman filed a motion for summary judgment on Flock's claims. After considering the record and the briefs and arguments of counsel, the trial court granted Brown–Forman's motion on April 14, 2009. Thereafter, Flock filed a motion to reconsider, Kentucky Rule(s) of Civil Procedure ("CR") 59.05, which the trial court denied on June 4, 2009. This appeal followed.

### Summary Judgment Standard

Flock argues that the trial court erred by dismissing his claims for age discrimination, gender discrimination, and retaliation. We review the trial court's order under the well-settled standard of review governing appeals from a summary judgment. Summary judgment may be granted only if "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. The trial court must view the record "in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky.1991). Further, "a party opposing a properly supported summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Id.* at 482. On review, the appellate court must determine "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.App.1996).

### Age Discrimination Claim

With respect to the age discrimination claim, Kentucky Revised Statute(s) ("KRS") 344.040(1) provides that it is unlawful for an employer to discharge or otherwise discriminate against an individual because that individual is forty years of age or older. In the absence of direct evidence of discriminatory motivation, a plaintiff claiming age discrimination with respect to an employment decision must satisfy the burden-shifting test set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Williams v. Wal–Mart Stores, Inc.*, 184 S.W.3d 492, 495 (Ky.2005). The plaintiff must first establish a *prima facie* case of age discrimination by showing that he: (1) was a member of a protected class; (2) was discharged; (3) was qualified for the position from which he was discharged; and (4) received disparate treatment from a similarly situated younger person or was replaced by a significantly younger person. *Id.* at 496. Under the *McDonnell Douglas* framework, a plaintiff is not required to introduce direct evidence of discrimination. *Kline v. Tennessee Valley Authority*, 128 F.3d 337, 349 (6th Cir.1997); *Williams, supra* at 496.

■ The trial court found that Flock failed to prove the fourth element of his *prima facie* case—that he was treated differently than a similarly situated employee from outside the protected class. As a point of comparison, Flock referred to Brown–Forman's treatment of John Wittig, a forty-year-old Vice President of the company's Atlantic Division, whom he accuses of misclassifying expenses. The trial court found that Flock had failed to substantiate his claim that Wittig was treated more leniently for an infraction which was similar to his infraction. The trial court also found that Flock had failed to substantiate his accusation that Brown–Forman had failed to investigate other employee misconduct.

We agree. As the trial court noted, Flock fails to specifically set out how Wittig misclassified financial information or even the details of Wittig's alleged misconduct. Likewise, Flock presents examples of other alleged misconduct by Brown–Forman employees, but he fails to substantiate these claims or set out how those situations were comparable to his circumstances.

However, Flock can also meet his *prima facie* case by showing that he was replaced by a younger employee. After his demotion, Flock's duties were divided between two employees: thirty-nine-year-old Marshall Farrar and Patrick Moran. The trial court found that Flock was not replaced since his duties were merely reallocated to different individuals. Citing *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir.2003).

We do not find this rule applicable in this case. As an initial matter, the rule generally applies in cases where the termination was due to a work-force reduction. *See Barnes v. GenCorp, Inc.*, 896 F.2d 1457 (6th Cir.1990), and *Sahadi v. Reynolds Chemical*, 636 F.2d 1116 (6th Cir.

1980). The Sixth Circuit has applied the rule in *Grosjean v. First Energy Corp., supra*, to a disciplinary demotion. However, the facts of that case were significantly different from those in the present case.

In *Grosjean*, the plaintiff had been trained by an experienced yard supervisor, John Gallagher. Thereafter, Grosjean shared supervisory duties with Gallagher. After the demotion, Gallagher took on Grosjean's duties in addition to his own. The Sixth Circuit emphasized that a "person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties." *Id.* at 336 (citations omitted). Under these circumstances, the court found that Grosjean was not replaced by Gallagher. *Id.* However, Grosjean's position was later filled by another employee, Richard Riley. In this respect, the Sixth Circuit concluded that "Grosjean was replaced, in both the colloquial and the legal meanings of that term, by Riley." *Id.* See also *Williams, supra* at 496–97, noting that the permanent replacement, not the temporary replacement, was the relevant replacement for purposes of plaintiff's age discrimination claim.

Thus, the focus of the rule is not simply whether Flock was replaced by existing employees, but that his duties were redistributed among existing employees who already perform similar work. Flock's responsibilities for duty-free sales in the Latin American and Caribbean markets were transferred to Patrick Moran in Brown–Forman's Atlantic Division. To this extent, it may be argued that these duties were merely reallocated to another

division which already performed similar work.[1]

However, Flock's other duties with respect to Vista Markets were allocated to a position that was filled by Marshall Ferrar. While Berg equivocated about whether Ferrar was "promoted" into the new position, there is no indication in the record that Ferrar was already performing similar duties to those which he assumed when he took over Vista Markets. It is agreed that Ferrar is significantly younger than Flock. Under these circumstances, we conclude that Flock has established a *prima facie* case of age discrimination.

 But while the trial court incorrectly found that Flock had failed to establish a *prima facie* case of age discrimination, it went on to address the remaining elements of the *McDonnell Douglas* test. Once a plaintiff makes a *prima facie* case under this test, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the termination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. Brown–Forman has clearly met this burden by establishing that it demoted Flock due to his involvement in the misclassification of expenses in 2005. Flock concedes that his actions amounted to misconduct under Brown–Forman's code of conduct.

 Since Brown–Forman has articulated a legitimate reason for its employment decision, the ultimate burden shifts back to Flock to show that the explanation is merely pretextual and that the decision was actually motivated by age discrimination. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). A plaintiff must present "cold hard facts creating an inference showing age discrimination was a determining factor" in his discharge. *Harker v. Federal Land Bank of Louisville*, 679 S.W.2d 226, 229 (Ky.1984). A plaintiff may meet this burden by direct evidence, or by circumstantial evidence showing that (1) the proffered reasons for the employment decision are false; (2) the proffered reasons did not actually motivate the decision; or (3) the reasons given were insufficient to motivate the decision. *Williams, supra* at 497.

While Flock concedes that the misclassification of expenses was an error of judgment, he points to a number of factors to suggest that Brown–Forman had improper ulterior motives in its decision to demote him. Flock contends that his role in the misclassification was minor. He had no direct responsibilities for making accounting entries and was merely offering a suggestion when asked by Maier. Maier and Wilkerson, in contrast, had significant roles in the misclassification. Maier specifically directed Wilkerson to change the account entry to cost of goods sold. Flock was not involved in any of these actions other than the initial suggestion. However, Flock notes that he was punished more severely than either Maier or Wilkerson.

Furthermore, Flock contends that the decision makers at Brown–Forman had decided to punish him before they completed their investigation. In addition, Brown–Forman's executives repeatedly accused him of directing the misclassification. However, Flock notes that during the litigation Brown–Forman altered its position, admitting that Flock had merely "advised" Maier to misclassify the expenses. Given the disproportionate punishment and Brown–Forman's conflicting reasons for the demotion, Flock contends that a fact-

---

1. In addition, the record does not indicate whether Moran was significantly younger than Flock.

finder could reasonably believe that Brown–Forman's stated reasons were false.

Finally, Flock also points to various statements by the decision makers at Brown–Forman which suggest that Flock's age was a motive in the discrimination. Prior to the expense mischaracterization incident, Berg had commented that Flock had "a natural Brown–Forman tendency toward conservatism." After the expense mischaracterization incident, Jackie Strange, a Brown–Forman attorney, and Lisa Steiner, the Human Resources Director, both advocated for Flock's termination. Strange testified that Steiner had been on a "path" against the "good old boys network." Strange also stated that Steiner wanted to demonstrate that senior executives who were involved in financial misconduct would no longer be treated leniently. Similarly, Brown–Forman's General Counsel, Michael Crutcher, castigated Flock for his mistake, saying, "This is a new world—past practices of twenty-five years ago [are] no longer tolerated." Crutcher also advocated for Flock's termination.

When taken together, Flock contends that these facts raise an inference that age discrimination was at least part of Brown–Forman's motive for the severity of his punishment. We disagree. Flock cannot prevail on his discrimination claim merely questioning the soundness of Brown–Forman's business judgment or practices. *Wrenn v. Gould,* 808 F.2d 493, 502 (6th Cir.1987). Even if Brown–Forman rushed to judgment about Flock's culpability or if his punishment was unfair, Flock must show that his age was a motivating factor in the demotion.

We agree with the trial court that the record does not support such an inference. Flock suggests that Berg disliked him personally, but there is no evidence that any such antipathy or dislike was motivated by Flock's age. Although Brown–Forman has somewhat changed its terminology in describing Flock's alleged misconduct, the change is mostly semantic rather than substantive. Furthermore, the comments by the decision makers at Brown–Forman do not suggest a discriminatory motive. Rather, they only suggest a view that senior executives should be held to a higher standard than lower-level employees.[2] Finally, Brown–Forman correctly notes that most of the individuals involved in the decision were in the same age group as Flock. Given the absence of any credible evidence supporting an inference that Flock's age was a motivating factor in his demotion, the trial court properly granted summary judgment on the age discrimination claim.

### Gender Discrimination Claim

■ In order for Flock to establish a *prima facie* case for reverse-gender discrimination, he must show background circumstances which support the suspicion that Brown–Forman is an unusual employer who discriminates against men, and that he was treated differently than employees who were similarly situated but outside of the protected group. *Briggs v. Potter,* 463 F.3d 507, 517 (6th Cir.2006). The trial court found that Flock had failed to prove either of these elements. We agree.

On the first prong, the court found that Flock did not prove that Brown–Forman is an employer who discriminates against men (a departure from the norm in such cases where gender discrimination usually targets women). The court noted that the

---

**2.** The trial court also suggested that the alleged comment by Steiner was inadmissible as hearsay.

majority of the senior management and those who made the decision to demote him were men. Furthermore, we agree with Brown–Forman that Maier and Wilkerson are not similarly situated to Flock. They were in lower salary grades and, unlike Flock, were not part of senior management. Although Flock may disagree with the severity of his punishment compared to that received by Maier and Wilkerson, he cannot show that he was punished more severely because he is male. Therefore, the trial court properly dismissed his gender discrimination claim.

### Retaliation Claim

 Finally, Flock contends that Brown–Forman retaliated against him after he filed his discrimination claims in violation of KRS 344.280. A *prima facie* case for retaliation requires a plaintiff to demonstrate that (1) he engaged in protected activity; (2) that the exercise of his civil rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Brooks v. Lexington–Fayette Urban County Housing Authority*, 132 S.W.3d 790, 803 (Ky.2004). While the trial court agreed that Flock had met the first two elements of his *prima facie* case, it determined that Flock had failed to prove that there was a substantial connection between his filing of the discrimination claim and any adverse action. The court found that most of the adverse consequences which Flock suffered were the result of his demotion and not from the exercise of his right to file a discrimination complaint. The court also found that Flock's other complaints of retaliation amounted to minor indignities and were not actionable.

Flock argues that he presented significant evidence showing that Brown–Forman retaliated against him because he filed his discrimination claims. He points to a comment in late 2005, when Crutcher told him that Brown–Forman would "beat his ass in court" if Flock filed a discrimination claim. Flock further maintains that the Brown–Forman executives "set him up to fail" in his new position. After his demotion, Flock's position in Global Spirits pricing involved suggesting various pricing strategies to senior Brown–Forman managers. Flock contends that his new supervisors refused to meet with him to discuss pricing strategies and arbitrarily limited his authority to work with other Brown–Forman managers. He also alleges that his supervisors refused to timely complete his performance evaluations, and that they essentially "hijacked" his job after August 2006, leaving him only menial duties such as training junior employees, tracking prices, and working with lower-level field employees. Finally, he notes that his supervisor, McCauley Brown, told him in 2008 that no one at Brown–Forman wanted to work with him because of the lawsuit.

Brown–Forman disputes most of Flock's claims of unfair treatment. It notes that Flock received a "Fully Achieves" performance rating on his 2007 evaluation, as well as a pay raise. While Flock's duties changed several times after his demotions, Brown–Forman notes that it underwent a company-wide reorganization during this period. Brown–Forman also points out that Flock's duties frequently changed during his entire tenure with the company.

We agree with the trial court that most of the adverse consequences which Flock suffered were the result of his demotion in December 2005. We further agree with the trial court that Flock has failed to show that any subsequent actions were related to the filing of his discrimination claims or that they amounted to a materi-

ally adverse employment action. *Brooks, supra* at 803. At most, Brown's comments and subsequent e-mail to Flock merely demonstrate that some of Flock's coworkers may have been concerned about becoming involved in Flock's litigation. The comments do not demonstrate any organized effort by Brown–Forman to undermine or ostracize Flock. Under these circumstances, we conclude that the trial court properly granted summary judgment on the retaliation claim.

In conclusion, Flock failed to present sufficient evidence to support actionable claims for age discrimination, reverse-gender discrimination or retaliation. Although Flock arguably presented a *prima facie* case for age discrimination, he failed to present sufficient evidence to rebut Brown–Forman's legitimate, nondiscriminatory reason for demoting him. Flock admits that he gave improper advice about characterizing the expenses from the Puerto Rico market. While his role in the incident may have been minor, Brown–Forman presented a legitimate reason for punishing him more severely than the lower-level employees who were also involved. Given the absence of any evidence that this decision was motivated by Flock's age, Flock may not prevail merely by questioning the soundness of Brown–Forman's business judgment on this matter.

Likewise, Flock failed to show that he was similarly situated to the two women involved in the expense-mischaracterization incident. Without evidence that Brown–Forman is the unusual employer that favors women over men, he cannot prevail on his reverse-gender discrimination claim. Finally, Flock failed to present sufficient evidence showing that Brown Forman subjected him to materially adverse employment actions because he filed his discrimination claims. Therefore, he failed to establish a *prima facie* case of retaliation.

Accordingly, the judgment of the Jefferson Circuit Court is affirmed.

ACREE, Judge, concurs.

COMBS, Judge, dissents in part by separate opinion.

COMBS, Judge, dissenting in part.

I dissent solely as to the retaliation claim. I would reverse entry of summary judgment on this issue and order that it proceed to trial. There is more than ample evidence that Mr. Flock was treated in a retaliatory fashion because he exercised his legitimate right to file this lawsuit. Regardless of the merits of the underlying suit, the act of retaliation remains an actionable and viable claim. Summary judgment inappropriately disposed of this cause of action.