RENDERED:  MAY 19, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0557-MR

QUEEN DEBORAH CA'MEL                      APPELLANT


                 APPEAL FROM JEFFERSON CIRCUIT COURT
v.             HONORABLE A.C. MCKAY CHAUVIN, JUDGE
                  ACTION NO. 11-CI-007599


LOUISVILLE/JEFFERSON COUNTY
METROPOLITAN (METRO)
GOVERNMENT                               APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, JONES, AND TAYLOR, JUDGES.

CETRULO, JUDGE:  Appellant Queen Deborah Ca'Mel ("Ca'Mel") appeals a

directed verdict of the Jefferson Circuit Court dismissing her discrimination claims

based on race and sex, and a jury verdict dismissing her workplace retaliation

claim.  After review, we affirm.

# I. FACTUAL BACKGROUND

In 2009, Ca'Mel, an African American female, was hired as a police recruit and attended the Louisville Metro Police Department ("LMPD")[1] Academy. Despite struggling mightily throughout the Academy, she graduated in August 2010 and was sworn in as a probationary officer. The probationary period for an LMPD officer begins with four training phases and lasts one year.

Ca'Mel completed the first two phases with Seventh Division. Her police training officer stated that during that time, she "did not accept criticism well, that she became defensive when she was critiqued, and she had difficulty with officer safety, self-awareness, and report writing[.]" *Ca'Mel v. Louisville Metro/Jefferson Cnty. Metro. Gov't Police Dep't*, No. 2013-CA-001988-MR, 2015 WL 226088, at *2 (Ky. App. Jan. 16, 2015). At her mid-term evaluation, she failed four of the 15 core competencies and her evaluator (different from her training officer) stated that her failure was "the culmination of her issues." Ca'Mel was assigned a new training officer, repeated the training, and passed the second mid-term evaluation. She completed the last two training phases and passed her final evaluation with Seventh Division. In July 2010, she began riding solo with Seventh Division.

---

[1] For purposes of this Opinion, we will refer to the Appellee Louisville/Jefferson County Metropolitan Government as LMPD, the department of government involved.

In September 2010, Ca'Mel transferred and began riding solo with First Division. She struggled with interpersonal relationships within her new division. In particular, Ca'Mel struggled to interact effectively with Officer Humphrey, a four-year veteran of First Division at that time. She stated that he publicly criticized her, mocked her on the radio, and micro-managed her policing. LMPD contends he was a senior officer attempting to help and advise her.

Within days of her arrival at her new division, she discovered a penis drawn on the rear windshield of her personal vehicle while it was parked in the division's parking lot. She reported the drawing to her sergeant, and he informed her that he would address the incident with the platoon to avoid similar incidents. Additionally, Ca'Mel contends that some of her colleagues refused to back her up on traffic stops and called her traffic stops "bullshit" over the radio. However, Ca'Mel did not present evidence of any specific incident where help was warranted, but not received. Also, someone left an anonymous note in her office mail slot telling her she needed to know where her beat partners were at lunch; Ca'Mel took offense to the note. Officer Humphrey later admitted that he left the note, and LMPD argued that such a note was intended to be helpful and advisory because "[i]t is important for officers to know where their potential backup is in case they were to get into a situation requiring additional officers."

Procedurally, she struggled as well. During those first few months with First Division, fellow officers reported that she breached procedure on at least four occasions: (1) she did not follow protocol when she requested urgent assistance in a non-urgent situation, (2) she did not immediately report a cruiser accident to her supervisor, (3) she drove through a fire scene and over a hose, and (4) she instructed vehicle owners to await a wrecker in a high-crime area. These incidents all occurred during her probationary period. The only other incident relevant here occurred in February 2011, when Ca'Mel arrested a woman without a valid basis for taking her into custody.

On January 12, 2011, Ca'Mel submitted a memorandum ("January 12 Memo") to her chain of command complaining about the penis drawing and her difficulties with Officer Humphrey. The LMPD ordered the Professional Standards Unit ("PSU") to investigate her claims, but the exact start date and end date of that investigation is unclear from the record.

Ca'Mel's probationary period was set to end on January 29, 2011. However, prior to January 29, the LMPD filed a motion with the Louisville Metro Police Merit Board (the "Merit Board") requesting a three-month extension of her probation, and the Merit Board granted the motion. One month later, on March 4, LMPD gave Ca'Mel a "probationary dismissal" letter terminating her employment

-4-

effective immediately.[2] Ca'Mel appealed her termination to the Merit Board and won. The Merit Board deemed the extension invalid because the LMPD did not provide timely written notice to her. As a result, the Police Chief rescinded the termination letter on March 18.

On March 25, 2011, Ca'Mel filed a formal complaint with the LMPD ("March 25 Complaint"). That March 25 Complaint referenced the same information in her January 12 Memo (*i.e.*, the penis drawing and the hostilities with Officer Humphrey). PSU completed its investigation and concluded that Ca'Mel violated procedure for not properly reporting the cruiser accident and arresting the woman in February on improper charges. In a letter dated May 16, 2011, the Police Chief informed Ca'Mel that LMPD was terminating her employment due to her poor performance during the Academy, as well as numerous protocol breaches that occurred during and after her probationary period.

## II. PROCEDURAL BACKGROUND

In November 2011, Ca'Mel filed a lawsuit in Jefferson Circuit Court claiming discrimination based on race, discrimination based on sex, and retaliation pursuant to the Kentucky Civil Rights Act ("KCRA"), as codified in Kentucky

---

[2] Under the LMPD Collective Bargaining Agreement and Metro Personnel Polices, the LMPD does not require cause to terminate a probationary employee.

Revised Statute ("KRS") Chapter 344.[3]  Those claims were delayed while the wheels of the administrative appeals turned slowly over the next eight years.

In 2012 – after holding hearings on four separate dates – the Merit Board upheld Ca'Mel's second termination.  She appealed to the Jefferson Circuit Court, and, in 2013, that court affirmed the Merit Board's decision, finding that the decision was not arbitrary nor in violation of Ca'Mel's due process.  Ca'Mel appealed to this Court.  In 2015, a panel of this Court determined that precedent supported the Merit Board's decision to review Ca'Mel's entire employment record (including her probationary period), but her Academy performance should not have been a factor in her termination.  *Ca'Mel*, WL 226088, at *1, *7.  This Court reversed and remanded[4] with instructions for the Merit Board to consider only post-Academy conduct and stated that the Merit Board need not hold another hearing "because it appears the record was fully developed below."  *Id.* at *7.

On remand, the Merit Board – considering only Ca'Mel's employment performance post-Academy – again voted to sustain her termination.  In 2016, she again appealed the Merit Board's decision to the circuit court and that court again affirmed.  Ca'Mel appealed to this Court and, in 2018, this Court affirmed the decision to terminate her employment.  *Ca'Mel v. Louisville/Jefferson*

---

[3] She also made a claim of defamation, which was dismissed by agreed order in 2019.

[4] This Court also addressed procedural and due process challenges that are not relevant here.

*Cnty. Metro. Gov't Police Dep't*, No. 2016-CA-001842-MR, 2018 WL 3005925, at *1, *3 (Ky. App. Jun. 15, 2018).

Then – with the Merit Board's decision finalized and the COVID pandemic delays concluded – the remainder of Ca'Mel's claims (discrimination and retaliation) proceeded in the Jefferson Circuit Court. The trial court held a three-day jury trial in March 2022. At the close of Ca'Mel's proof, the trial court granted LMPD's motion for a directed verdict on the race and sex discrimination claims. The court submitted her retaliation claim to the jury; and, with a vote of 11-1, the jury voted in favor of the LMPD. Thereafter, the trial court entered a judgment on the jury verdict and its directed verdict, dismissing her claims in full ("March 10 Order"). Ca'Mel moved for a new trial, but the trial court denied that motion in its April 27, 2022 Order ("April 27 Order"). Ca'Mel again appealed.

### III.   ANALYSIS

On appeal, Ca'Mel argues the trial court inappropriately limited her case-in-chief through admonitions and by refusing to admit relevant evidence. We do not agree. In fact, the trial court put on a masterclass on civil procedure and patience throughout the three-day trial.

There are two orders on appeal. The March 10 Order granted LMPD's motion for a directed verdict regarding Ca'Mel's gender and race

discrimination claims and dismissed her retaliation claim, consistent with the jury verdict. The April 27 Order denied Ca'Mel's motion for a new trial.

### A. Discrimination

> [W]hen presented with a motion for directed verdict, a trial court must draw all fair and reasonable inferences from the evidence in favor of the party opposing the motion. As a reviewing court, we must ascribe to the evidence all reasonable inferences and deductions which support the claim of the prevailing party.
>
> It is the province of the jury, of course, to weigh the evidence, but a directed verdict is appropriate where there is no evidence of probative value to support an opposite result because the jury may not be permitted to reach a verdict upon speculation or conjecture. The judgment of the trial court in such matters will only be substituted when clearly erroneous. In the end, a trial court should only grant a directed verdict when there is a complete absence of proof on a material issue or if no disputed issues of fact exist upon which reasonable minds could differ.

*Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 285 (Ky. 2014) (internal quotation marks and citations omitted).

Here – after Ca'Mel completed her proof – the trial court granted LMPD's motion for a directed verdict dismissing the discrimination claims. The trial court found that Ca'Mel failed to show how her termination was related to her race or gender. On appeal Ca'Mel repeats her claims that discrimination is apparent, but we, like the trial court, find no discrimination as a matter of law.

It is unlawful for an employer to "fail or refuse to hire . . . any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's race . . . [or] sex . . . ." KRS 344.040(1)(a). Plaintiffs can establish discrimination by either direct or circumstantial evidence. *Norton Healthcare, Inc. v. Disselkamp*, 600 S.W.3d 696, 719 (Ky. 2020) (citing *Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 495 (Ky. 2005)). Ca'Mel argues she established discrimination through both direct and circumstantial evidence.

Ca'Mel argues that direct evidence exists as a result of Officer Humphrey's testimony. She argues that Officer Humphrey (also an African American) used "the words sex, race, gender, black, and white in explaining his actions toward [Ca'Mel]" and that the use of the words alone were direct evidence of discrimination. However, he never stated that he acted a certain way toward her *because* she was an African American woman. Ca'Mel does not point to any specific statement by Officer Humphrey (nor anyone else) that conveys bias, harassment, or discrimination based on race or gender. Additionally, Ca'Mel makes a confusing argument about possible beliefs in stereotypes existing within the LMPD,[5] but again, she gave no indication how possible stereotypical beliefs

---

[5] Ca'Mel argues that Officer Humphrey "adopted his Caucasian colleagues' racial and sexual stereotyping in acting toward and interacting with [Ca'Mel], and that he influenced LMPD's decision to fire [Ca'Mel]."

affected her, nor the connection of those beliefs to her termination. Direct "evidence, standing alone, must demonstrate discriminatory motivation." *Charalambakis v. Asbury Univ.*, 488 S.W.3d 568, 577 (Ky. 2016) (citation omitted). "[D]irect evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Id.* Here, Ca'Mel presented no direct evidence.

Lacking direct evidence, we shift our analysis to circumstantial evidence. Kentucky frequently applies the burden-shifting test established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 68 (1973), in cases without direct evidence in order "to allow a victim of discrimination to establish a case through inferential and circumstantial" evidence. *Norton Healthcare*, 600 S.W.3d at 719 (quoting *Williams*, 184 S.W.3d at 495).

First, to prevail, Ca'Mel needed to prove a prima face case of discrimination. A prima facie discrimination action includes proof that a plaintiff: (1) was a member of a protected group; (2) was subjected to an adverse employment action; (3) was qualified for the position; and (4) similarly situated individuals were treated more favorably. *The Bd. of Regents of N. Ky. Univ. v. Weickgenannt*, 485 S.W.3d 299, 306 (Ky. 2016) (citation omitted); s*ee also Williams*, 184 S.W.3d at 496 (citation omitted). The crux here is proving that

-10-

similarly situated people were treated more favorably than she was.  *Weickgenannt*,

485 S.W.3d at 306.  Ca'Mel argues that the trial court erroneously limited her

argument on that issue, but we do not agree.

Here, the trial court did not permit her to relitigate previous issues,[6]

but did allow the admission of evidence as it related to similarly situated people.

To qualify as a similarly situated person, the person

> must have reported to the same supervisor as the plaintiff,
> must have been subject to the same standards governing
> performance evaluation and discipline, and must have
> engaged in conduct similar to the plaintiff's, without such
> differentiating or mitigating circumstances that would
> distinguish their conduct or the appropriate discipline for
> it.

*Mazzella v. RCA Global Commc'ns, Inc.*, 642 F. Supp. 1531, 1547 (S.D.N.Y.

1986).[7]

---

[6] The trial court did not allow Ca'Mel to admit into evidence any documents that *specifically* and *only* challenged the legitimacy of LMPD's reasons for firing Ca'Mel.  Such documentation included Ca'Mel's high productivity, letters of recommendation, and other material challenging the reports of her procedural errors.  The trial court was correct to exclude these documents because the legitimacy of LMPD's reasons for firing her had already been adjudicated.  The doctrine of "issue preclusion bars the parties from relitigating any issue actually litigated and finally decided in an earlier action."  *Yeoman v. Commonwealth, Health Policy Bd.*, 983 S.W.2d 459, 465 (Ky. 1998).  Additionally, Ca'Mel conflates aspects of her discrimination and retaliation arguments, but the same rules of evidence and issue preclusion apply to both claims.  None of the avowal exhibits directly refuted the LMPD's reasons for the firing.

[7] LMPD cites to this federal case.  Because KCRA is similar to the Federal Civil Rights Act of 1964, generally, interpretation of the Kentucky statute is consistent with federal case law.  *Stewart v. Univ. of Louisville*, 65 S.W.3d 536, 539 (Ky. App. 2001) (citation omitted).

However, Ca'Mel presented no evidence that she was treated differently than other similarly situated people. She did not present any evidence that other officers (in her platoon or otherwise) made the same or similar errors or omissions, but did not receive adverse employment action, or received lesser adverse employment action.

Second, even if she had established a prima facie case, the *McDonnell Douglas* test would have then shifted the burden to LMPD to prove it had non-discriminatory reasons to fire her. Again, LMPD previously established this fact long before the trial currently on appeal; a 2018 panel of this Court agreed with the circuit court that the Merit Board relied on legitimate, substantial evidence when it affirmed Ca'Mel's termination. *Ca'Mel*, 2018 WL 3005925, at *3.

Third, the *McDonnell Douglas* test would have next shifted the burden back to Ca'Mel to show that LMPD's reasons for her termination were a pretext for discrimination. *Commonwealth v. Solly*, 253 S.W.3d 537, 541 (Ky. 2008) (citing *McDonnell Douglas*, 411 U.S. at 800, 93 S. Ct. at 1824-26). Once again, Ca'Mel did not meet her burden. On appeal she acknowledges that she needed to prove "that her race or sex were a 'substantial' or 'motivating' factor in [LMPD's] decision to fire her from her job." However, she did not. The only tangentially sexual reference was the single instance of a penis drawn on her vehicle window, but she in no way connected that singular incident to her overall

treatment or termination. Ca'Mel argues that she faced hostility and enhanced oversight, especially from Officer Humphrey, but does not give any insight into how any hostility or oversight was linked to her race or gender. Ca'Mel testified that she believed that her fellow officers failed to provide her with backup, but she never reported a single instance of such a failure, nor did she present any evidence that any alleged failure to provide backup was connected to her race or gender.

In discrimination cases, "the ultimate question is 'of discrimination vel non.'" *Norton Healthcare*, 600 S.W.3d at 717 (quoting *United States Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 713, 103 S. Ct. 1478, 1481, 75 L. Ed. 403 (1983)). Although a "pretentious surplusage," here "discrimination vel non" reiterates that the overarching issue before us is whether discrimination occurred or not. *Id.* at 717 n.55. We think not. Ca'Mel did not present any evidence – circumstantial or direct – that LMPD discriminated against her due to her race or gender. The directed verdict was not clearly erroneous.

## B. Retaliation

During the three-day trial, Ca'Mel presented a claim for retaliation under KRS 344.280. She argued that she was fired for making her March 25 Complaint that formally reported the penis drawn on her car and her hostile interactions with Officer Humphrey. After deliberations, the jury returned a verdict (11-1) in favor of LMPD. The trial court, in its March 10 Order, entered a

judgment based upon the jury verdict. Subsequently, Ca'Mel moved for a new trial but was denied. On appeal, she argues that (1) the trial court committed reversible error by issuing frequent admonitions that inappropriately limited her theory of the case, and (2) these errors warranted a new trial.

First, we review a trial court's evidentiary rulings under the abuse of discretion standard. *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 577 (Ky. 2000) (citations omitted). The trial court has broad discretion in issuing admonitions as curative measures. *See Gould v. Charlton Co., Inc.*, 929 S.W.2d 734, 739-40 (Ky. 1996); *see also Johnson v. Commonwealth*, 105 S.W.3d 430, 441 (Ky. 2003). Here, we find no abuse of discretion because the trial court's frequent admonitions were due to failure by counsel for Ca'Mel to follow the trial court's instructions. For example, in one instance, the trial court interrupted Ca'Mel's closing argument, and – after a bench conference – the trial court issued this admonition to the jury:

> To the extent that you remember the proof differently than [Ca'Mel's counsel] does, you should rely on your recollection of the proof as to whether or not there was an investigation into the allegations against Officer Humphrey and whether or not there was a finding. There is proof in the record on which you may rely, and to the extent that's different than what [Ca'Mel's counsel] remembers, you should rely on what the proof was and your recollection of that proof.

This admonition occurred after her counsel made two misstatements during his closing statements: one mistake of fact, one of law.

As to the mistake in fact, counsel for Ca'Mel implied that the LMPD did not investigate Ca'Mel's concerns. "If [LMPD] would have addressed [Ca'Mel's] complaints there would have been a much greater likelihood that she could have saved her job." However, the Police Chief testified that there *was* a PSU investigation into Ca'Mel's complaints, and the investigation's conclusions were factored into the Police Chief's reasoning to terminate her employment. The trial court's admonition attempted to clarify counsel's mischaracterization of the testimony, and to encourage the jury to rely on their own memory.

As to the mistake of law, counsel for Ca'Mel misused the legal term "but for." Counsel seemed to be making an argument that "but for" LMPD's failure to investigate Ca'Mel's concerns, she would have been able to keep her job. During the bench conference, the trial court pointed out that this theory was not legally accurate for the retaliation claim before the jury. The retaliation claim was based on the allegation that Ca'Mel would not have been fired "but for" the complaint. The trial court clarified the misstatement of law to counsel but limited its admonition to the jury to only correct counsel's misstatement of fact. This admonition fell within the trial court's broad discretion.

Finally, as to the new trial motion, Kentucky Rule of Civil Procedure ("CR") 60.20 allows for a new trial under certain circumstances,[8] none of which are present here. We "presume the trial court's denial of a motion for a new trial to be correct and will reverse only upon a finding of clear error." *Jefferson v. Eggemeyer*, 516 S.W.3d 325, 337 (Ky. 2017) (citing *Bayless v. Boyer*, 180 S.W.3d 439, 444 (Ky. 2005)). Moreover, "[t]here must be very strong reasons for granting a new trial, and it must appear with reasonable certainty that injustice or wrong would result unless the relief be granted and another opportunity allowed to relitigate the same issues." *Gray v. Sawyer*, 247 S.W.2d 496, 498 (Ky. 1952) (citations omitted). We find no such injustice nor any error by the trial court in denying the motion for a new trial. In fact, from our review of the record, we find LMPD's appellate argument to be a sufficient and accurate summary of this issue.

> Most important to the retaliation case is when the event occurred for which Ca'Mel alleged she was retaliated against. Ca'Mel specifically identifies and limited her retaliation claim to those events which occurred after March 25, 2011, when she sent written notice of sexual and racial discrimination to LMPD under the advice of counsel. The date is key because the decision to terminate Ca'Mel had already occurred on March 4, 2011. The termination was only rescinded because of a

---

[8] "On motion a court may . . . relieve a party . . . from its final judgment, order, or proceeding upon the following grounds: (a) mistake, inadvertence, surprise or excusable neglect; (b) newly discovered evidence . . . (c) perjury or falsified evidence; (d) fraud affecting the proceedings, other than perjury or falsified evidence; (e) the judgment is void, or has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (f) any other reason of an extraordinary nature justifying relief." CR 60.02.

-16-

technical error in providing notice in the proper form to Ca'Mel of the extension of her probationary period.

. . .

The only adverse employment action taken against Ca'Mel after the triggering event was her final termination. The reasons for her termination existed prior to her March 25, 2011 complaint and were well known to [her Police Chief]. LMPD had already actually attempted to terminate her. As such, a reasonable jury certainly can conclude that her termination was not in retaliation for her March 25, 2011 complaint as they had already made it clear by no later than March 4, 2011 they intended to fire her.

Simply, it was reasonable for the jury to conclude that Ca'Mel's firing was not in retaliation for her March 25 Complaint, considering she filed the Complaint after LMPD decided to end her employment on March 4. There is more than enough evidence in the record to support the supposition that Ca'Mel's employment was terminated for cause, not retaliation. We find no error in the trial court's denial of a new trial.

## IV. CONCLUSION

For all of the foregoing reasons, the judgment of the Jefferson Circuit Court is AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Philip C. Kimball
Louisville, Kentucky

BRIEF FOR APPELLEE:

Michael J. O'Connell
Roy C. Denny
Louisville, Kentucky