Kevin BISHOP, Appellant,

v.

MANPOWER, INC. OF CENTRAL KENTUCKY, Appellee.

No. 2006–CA–000351–MR.

Court of Appeals of Kentucky.

Dec. 15, 2006.

Charles W. Gorham, Joseph H. Dahlman, Lexington, KY, for appellant.

Laurie Goetz Kemp, Wendy Carole Hyland, Woodward, Hobson & Fulton, LLP, Louisville, KY, for appellee.

Before COMBS, Chief Judge; WINE, Judge; PAISLEY,[1] Senior Judge.

WINE, Judge.

Kevin Bishop appeals from a summary judgment by the Fayette Circuit Court dismissing his retaliatory discharge claim against Manpower, Inc. of Central Kentucky. Bishop argues that he presented

sufficient evidence to rebut Manpower's stated reasons for terminating him and to prove that Manpower fired him in retaliation for his pursuit of a workers' compensation claim. Because we agree with Bishop that he presented sufficient evidence to preclude a summary judgment in Manpower's favor, we reverse and remand. However, we affirm the trial court's earlier ruling that Bishop is not entitled to pursue punitive damages arising from this claim.

Manpower, a temporary employment service, provides supplemental staffing to a variety of companies, including Toyota Motor Manufacturing. In addition to its ordinary staffing services, Manpower places several hundred employees at the Georgetown Toyota plant with the expectation that the employees will become full-time Toyota employees. Manpower also maintains an office at the Georgetown Toyota plant with two on-site supervisors, Barbara Aker and Trish Chasteen.

Bishop began working for Manpower at the Georgetown Toyota plant on November 19, 1999. While working on June 15, 2001, Bishop began experiencing pain in his chest. Pursuant to Toyota's policy, he was treated by medical personnel at the plant and then was taken to the emergency room. The physician at the hospital ruled out a heart attack, but concluded that Bishop had strained several muscles in his chest. The physician placed Bishop on work restrictions for five days.

At a follow-up appointment on the morning of June 18, the physician released Bishop to return to work. Bishop reported to Manpower's office at the Toyota plant and told the supervisors that he had been released to work. However, he was not properly dressed for work at the time. According to Bishop, he told Aker and

1. Senior Judge Lewis G. Paisley sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

Chasteen that he intended to run some errands, then return home to change clothes. But Bishop also recalls telling Aker that he was not sure if he would be able to return to work before the end of his shift. Bishop states that Aker did not insist that he return to work that day. For her part, Aker states that she told Bishop to change clothes and immediately return to work the rest of his shift.

Bishop did not return to work that day, nor did he call to inform Manpower that he would not be returning. Rather, when Manpower called, Bishop asked his wife to return the phone call. After learning of his absence, Aker and Chasteen checked Bishop's employment records and noted a number of prior unexcused absences. Later that day, Chasteen called Bishop to inform him that he was being terminated for excessive absenteeism.

Thereafter, Bishop filed this action against Manpower, alleging that he was wrongfully terminated for disability and for pursuing a workers' compensation claim, in violation of KRS 344.040 and 342.197. Following discovery, Manpower filed a motion for summary judgment, arguing that it had a legitimate, non-discriminatory reason for terminating Bishop's employment. The trial court granted the motion on December 13, 2005. Subsequently, the trial court denied Bishop's CR 59.05 motion to alter, amend or vacate, explaining that Bishop had failed to present evidence showing that Manpower's reasons for firing him were pretextual. This appeal followed.

The standard of review governing an appeal of a summary judgment is well settled. We must determine whether the trial court erred in concluding that there was no genuine issue as to any material fact and that the moving party was entitled to a judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.

App.1996). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. In *Paintsville Hospital Co. v. Rose*, 683 S.W.2d 255, 256 (Ky.1985), the Supreme Court of Kentucky held that for summary judgment to be proper, the movant must show that the adverse party cannot prevail under any circumstances. The Court has also stated that "the proper function of summary judgment is to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky.1991). Because summary judgments involve no fact finding, this Court reviews them *de novo*, in the sense that we owe no deference to the conclusions of the trial court. *Blevins v. Moran*, 12 S.W.3d 698, 700 (Ky.App.2000).

■ The central issue in this case concerns the sufficiency of Bishop's evidence showing that Manpower wrongfully terminated him for pursuing workers' compensation benefits. Ordinarily, an employer may discharge his at-will employee for good cause, for no cause, or for a cause that some might view as morally indefensible. *Firestone Textile Co. v. Meadows*, 666 S.W.2d 730, 731 (Ky.1983). However, a discharge of an at-will employee may be unlawful if it violates a constitutionally protected right implicit in a statute. *Id.* at 731. In order for this narrow exception to apply, the discharge must be contrary to a fundamental and well-defined public policy as evidenced by existing law, and the policy must be evidenced by a constitutional or

statutory provision. *Grzyb v. Evans,* 700 S.W.2d 399, 401 (Ky.1985).

In *Firestone,* the Kentucky Supreme Court held that an employee who pursues a workers' compensation claim and is subsequently terminated has a claim for retaliatory discharge against his employer "when the discharge is motivated by the desire to punish the employee for seeking the benefits to which he is entitled by law." *Id.* at 734. The General Assembly codified the *Firestone* holding in KRS 342.197(1), which states in part:

> (1) No employee shall be harassed, coerced, discharged, or discriminated against in any manner whatsoever for filing and pursuing a lawful claim under this [workers' compensation] chapter.

To establish a cause of action for retaliatory discharge, "it is incumbent on the employee to show at a minimum that he was engaged in a statutorily protected activity, that he was discharged, and that there was a connection between the 'protected activity' and the discharge." *Willoughby v. GenCorp, Inc.,* 809 S.W.2d 858, 861 (Ky.App.1990). As to the last prong of this test, the employee must prove that the workers' compensation claim was a substantial and motivating factor but for which the employee would not have been discharged. *First Property Management Corp. v. Zarebidaki,* 867 S.W.2d 185, 188 (Ky.1993). Furthermore, considering the legislative intent expressed in KRS 342.197, an employee may have a cause of action for retaliatory discharge even if he has not yet filed a formal workers' compensation claim. *Overnite Transportation Co. v. Gaddis,* 793 S.W.2d 129, 130–31 (Ky.App.1990).

In support of summary judgment, Manpower refers to the burden-shifting scheme established for civil rights claims in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Kentucky courts have never explicitly applied the *McDonnell Douglas* test in the context of a workers' compensation retaliatory discharge claim. But the test, as adapted for disability discrimination claims, bears a resemblance to requirements for proving a claim under *Firestone* and KRS 342.197(1). A plaintiff alleging disability discrimination must establish a *prima facie* case by showing that: (1) he is disabled; (2) he is "otherwise qualified" for the position with or without reasonable accommodation; (3) he suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled plaintiff was replaced. The employer must then offer a legitimate explanation for its action. If the employer satisfies this burden of production, the burden returns to the plaintiff to introduce evidence showing that the proffered explanation is pretextual. *See Hedrick v. Western Reserve Care System,* 355 F.3d 444, 452–53 (6th Cir.2004); *Monette v. Electronic Data Systems Corp.,* 90 F.3d 1173, 1178–79 (6th Cir.1996). *See also Kentucky Department of Corrections v. McCullough,* 123 S.W.3d 130 (Ky.2003).

The *McDonnell Douglas* burden shifting analysis does not directly conflict with the elements for proving a workers' compensation retaliatory discharge claim set out in *Firestone.* But we do not expressly endorse this approach given the more directly relevant authority interpreting KRS 342.197. The question is moot, however, because the trial court conceded that Bishop had established a *prima facie* claim under the *McDonnell Douglas* test, albeit a weak one. Rather, the controlling issue in this case concerns the question of pretext.

In considering this issue, the trial court looked to the reasoning of the civil rights employment discrimination cases, concluding that *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000), and *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), are "not only illustrative but also decisive on the issue of pretext in wrongful discharge/discrimination cases." Recently, the Kentucky Supreme Court followed these cases' stringent approach for proving pretext in an age discrimination claim. *Williams v. Wal–Mart Stores, Inc.*, 184 S.W.3d 492 (Ky.2005). The Court held that it is not enough to disbelieve the employer; the fact-finder must believe the plaintiff's explanation of intentional discrimination. *Id.* at 498–99.

The Court in *Williams* went on to explain that a plaintiff's establishment of a *prima facie* case and showing of evidence casting doubt on the employer's explanation will not always be sufficient to create an issue of fact concerning pretext. "Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Id.* at 499, citing *Reeves*, 530 U.S. at 148–49, 120 S.Ct. at 2109. The Court in *Williams* concluded that the plaintiff's weak showing of pretext, coupled with the employer's evidence that the individual who made the employment decision did not know the plaintiff's age at the time, warranted a judgment for the employer as a matter of law.

In *First Property Management Corp. v. Zarebidaki, supra,* the Kentucky Supreme Court applied the pretext reasoning of civil rights claims to a statutory claim alleging discrimination against an employee who has filed workers' compensation claims. Thus, the pretext analysis set out in *Williams, Reeves,* and *Hicks* is applicable to the current case. However, the Court in *Zarebidaki* also held that an employee need not show that retaliation was the sole or even the primary motivating factor in the discharge, but only that retaliation for filing or pursuing a workers' compensation claim was a substantial motivating factor in causing his discharge. *Id.* at 188–89. Thus, an "employer is not free from liability simply because he offers proof he would have discharged the employee anyway, even absent the lawfully impermissible reason, so long as the jury believes the impermissible reason did in fact contribute to the discharge as one of the substantial motivating factors." *Id.* at 188.

We do not believe that the Kentucky Supreme Court's reasoning in *Williams* necessarily conflicts with this earlier and more directly relevant authority. A claimant alleging employment discrimination, either under the civil rights act or under the workers' compensation act, has the burden of proving that the employer's stated reasons were pretextual. The claimant may demonstrate pretext either by direct or circumstantial evidence of a discriminatory motive. *Kentucky Center for the Arts v. Handley*, 827 S.W.2d 697, 700 (Ky.App.1991), citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). And finally, if the employer articulates a legitimate, non-retaliatory reason for the decision, the employee must show that the discriminatory motive was a substantial and motivating factor behind the adverse employment action. *Handley,*

827 S.W.2d at 701; *Zarebidaki,* 867 S.W.2d at 187–88.

■ In this case, Manpower has presented a facially valid reason for its employment decision: Bishop's prior unexcused absences and his failure to report for the rest of his shift on June 18, 2001. Bishop admits to these absences, but notes that they involved four court appearances and two sick days. In his deposition, Bishop states that his supervisors promised to work with him concerning those absences. Furthermore, Bishop never received any criticism of his work performance or warnings about his absences.

Bishop adds that Manpower's attitude toward him changed perceptibly while he was off work following his chest pains on June 15. According to Bishop, he spoke with Aker about workers' compensation covering his prescription medication. Bishop states that Aker answered that it would not be covered because the condition was not work related. Bishop asserts that Aker became hostile toward him after he made these inquiries about workers' compensation coverage.

In response, Aker stated that neither she nor her office had authority over workers' compensation issues. However, in several entries by Aker in Manpower's records, she labeled Bishop's claim to be "suspicious." Furthermore, Chasteen, the person who made the decision to fire Bishop, admitted that she did not check Bishop's absentee record until after Bishop began pursuing workers' compensation benefits.

While the evidence in favor of Bishop's claim is by no means overwhelming, we find that it is sufficient to overcome the threshold for summary judgment. Although Bishop had accrued more than the allowed number of unexcused absences, Manpower concedes that it never sought to terminate him for this reason prior to June 15. Furthermore, Manpower admits that it exercises a considerable degree of flexibility regarding its absentee policy. But after Bishop pursued his workers' compensation claim, the decision makers at Manpower began to scrutinize his employment record more closely. Such conduct may raise an inference that Manpower's decision was substantially motivated by a discriminatory intent. Moreover, there is a significant issue of fact of whether Aker and Chasteen clearly informed Bishop that he was required to return to work for the rest of his shift on June 18. Under the circumstances, we conclude that summary judgment was not appropriate in this case. Therefore, this matter must be remanded for further proceedings on the merits on Bishop's claim.

■ Bishop also appeals from the trial court's earlier ruling finding that he could not seek punitive damages on his retaliatory discharge claim. The trial court found that KRS 342.197 allows a claimant to recover only actual damages, and punitive damages are not included within the statutory definition of actual damages. *McCullough,* 123 S.W.3d at 138. Bishop does not dispute this authority, but he argues that any limitation on his right to recover punitive damages violates the jural rights doctrine as set out in *Williams v. Wilson,* 972 S.W.2d 260 (Ky.1998).

■ We disagree. The jural rights doctrine is not expressly set out in the Kentucky Constitution. Rather, Kentucky courts have held that it flows from a reading of §§ 14, 54, and 241. In essence, the doctrine states that the General Assembly has no authority to abolish or restrict a common law right of recovery for personal injury or wrongful death. *Id.* at 265; *see also Ludwig v. Johnson,* 243 Ky. 533, 49 S.W.2d 347 (1932). But by its express terms, the doctrine only applies to common

law rights of action. The doctrine does not bar the General Assembly from altering and limiting the remedies available under statutory claims arising under the Workers' Compensation Act. *Johnson v. Gans Furniture Industries, Inc.,* 114 S.W.3d 850, 854 (Ky.2003); *McDowell v. Jackson Energy RECC,* 84 S.W.3d 71, 73 (Ky.2002). Considering that KRS 342.197 only authorizes recovery of actual damages, the trial court correctly concluded that Bishop would not be entitled to recover punitive damages if he prevails on his claim.

Accordingly, the judgment of the Fayette Circuit Court dismissing Bishop's retaliatory discharge claim is reversed, and this matter is remanded for further proceedings. The trial court's ruling that Bishop is not entitled to pursue a claim for punitive damages is affirmed.

ALL CONCUR.