COLORAMA, INC., Appellant,

v.

Marty JOHNSON, Appellee.

No. 2008–CA–000443–MR.

Court of Appeals of Kentucky.

Sept. 4, 2009.

Jeffrey A. Darling, Lexington, KY, for appellant.

Thomas W. Moak, Prestonsburg, KY, for appellee.

Before CAPERTON, THOMPSON and WINE, Judges.

*OPINION*

CAPERTON, Judge.

The Appellant, Colorama, appeals the February 11, 2008, judgment of the Floyd Circuit Court, based upon a jury verdict finding that Colorama retaliated or discriminated against the Appellee, Marty Johnson (Johnson), for filing a workers' compensation claim[1] and for awarding damages and attorneys' fees against Colorama.

---

1. KRS 342.197 provides: "(1) No employee shall be harassed, coerced, discharged, or discriminated against in any manner whatsoever for filing and pursuing a lawful claim under this chapter." We note that in filing his complaint, Johnson did not specifically cite to this statute, but we cite it herein for clarification.

At trial, Johnson testified that he worked for Colorama for approximately eight years and that he earned a salary of $455.00 per week. Johnson testified that he sustained a work-related injury on January 28, 2006, when he stood on a washer and dryer to get some bedding and fell off, landing on a dolly. Following his fall, Johnson sought medical treatment and was off work for a period of time, during which he received temporary total disability (TTD) benefits. Johnson was subsequently released to return to work without restrictions by Dr. Ellen Ballard in April of 2006.

Johnson testified that after being released to return to work, he felt ready to try to do so and called Colorama on two occasions to make arrangements, on one occasion leaving a message for store manager Kevin Nelson and on another occasion for an employee named Keith. Johnson testified that he received no response from Colorama and that he contacted his attorney, who sent a letter to Colorama dated May 16, 2006. In that letter, counsel informed Colorama that Johnson had been released to return to work and needed to make arrangements to do so. Johnson testified that he received no response to the letter from Colorama.

Johnson testified that he never received any phone call, letter or any response from Colorama. He further testified that he spoke with the manager at Colorama and was advised that someone would return his call, but no one did. Johnson testified that there was no other reason for his termination aside from the fact that he had been off work for a work-related injury.

On cross-examination, Johnson agreed that he was physically unable to do the work that he had previously performed at Colorama and testified that in the two years following his injury, he had not engaged in any full-time work and had only recently started doing some part-time painting work. Johnson also conceded on cross-examination that in June of 2006, his physician, Dr. Ira Potter, placed severe work restrictions on Johnson which would prevent him from performing his job at Colorama.

Johnson testified that the workers' compensation carrier sent a letter to his attorney dated June 12, 2006, advising that Johnson should contact Colorama to arrange a return to work. Johnson testified that although he made two phone calls in May of 2006, he did not contact Colorama again after that time. Johnson conceded that he never contacted Jackie Sparkman, the Director of Human Resources for Colorama, although he was aware of her position.

Kelly Koenig, the adjuster from Kentucky Employers' Mutual Insurance (KEMI) assigned to Johnson's workers' compensation claim, also testified via deposition in this matter. Koenig testified that KEMI sent Johnson to Dr. Ellen Ballard for an independent medical examination and that Dr. Ballard released Johnson to return to work with no restrictions on April 18, 2006. Koenig testified that she notified Johnson that his TTD benefits had been suspended in light of his release to return to work.

Koenig further testified that she received a letter from Johnson's counsel advising that Johnson was ready to return to work and that after receiving the letter, she received a phone call from Jackie Sparkman on behalf of Colorama. Koenig testified that she and Sparkman did not discuss whether Johnson was going to be allowed to return to work. Koenig instructed Sparkman to forward a copy of the May 16, 2006, letter that she had received from Johnson's counsel for Koenig's review.

Koenig testified that she informed Sparkman that she would send a letter to Johnson stating that his TTD benefits had been terminated and that he could return to work. Koenig testified that Sparkman was not sent a copy of the letter she sent to Johnson's counsel, as she did not usually send copies to the policyholder. Koenig testified that the letter which she sent to Johnson's counsel did not say that Colorama would contact Johnson about putting him back to work.

Koenig testified that it is up to the employer and the injured worker to determine when and if the injured worker would return to work. Koenig denied ever telling Sparkman that she would handle those details. Koenig testified that she had no further communication with Sparkman or anyone else at Colorama from the time she wrote the letter to counsel for Johnson to the time Johnson filed suit against Colorama.

Jackie Sparkman testified on behalf of Colorama. She testified, in contradiction to Koenig's testimony, that upon receiving the aforementioned letter from Johnson's counsel, she contacted Koenig and was told that KEMI would "take care of it." Sparkman testified that Johnson was never terminated but conceded that he was never put back on the schedule. Sparkman testified, in contradiction to Johnson's testimony, that she did not recall anyone ever contacting Kevin Nelson about Johnson returning to work and that she never received any communication from Johnson about wanting to return to work until suit was filed.

Sparkman conceded that Colorama did not respond to Johnson's phone calls or to the letter from Johnson's counsel. Sparkman also testified that there might have

been light duty available at Colorama for Johnson.[2] Sparkman testified that Colorama had never terminated Johnson because of any workers' compensation claim and that he was treated no differently than anyone else who filed a claim. Further, Sparkman testified that Colorama carried Johnson's health insurance without cost to Johnson for almost a year.

Kevin Nelson, the former manager of the Colorama store at which Johnson worked, also testified at trial. Nelson testified that he never received a call from Johnson about returning to work, nor had anyone at the store advised him that Johnson had called. Nelson testified that he did not hire anyone to replace Johnson for approximately two months following the injury.

Finally, Colorama called David Lickliter, the Regional Manager, as a witness at trial. Lickliter testified that he never heard from anyone, including Johnson, that Johnson was trying to return to Colorama. Lickliter testified that Johnson knew him and had contacted him directly on prior occasions.

As noted, a jury trial was held in this matter on February 4, 2008. At the close of evidence, both Johnson and Colorama moved for directed verdicts, both of which were denied by the court. The jury ultimately returned a verdict in favor of Johnson in the amount of $8,645.00, the full amount of damages sought. As noted, on February 11, 2008, the court entered judgment upon the jury verdict. Subsequently, attorney fees and costs were approved by court order dated February 25, 2008. It is from that verdict and award of damages that Colorama now appeals. Colorama also asserts that the court erred in

---

**2.** Johnson urges this Court to take notice that in an affidavit submitted by Sparkman in the workers' compensation claim, Sparkman stated that no light duty was available for Johnson at Colorama.

denying its motions for directed verdict. We review those issues respectively.

■ At the outset, we note that it was Johnson's burden to establish a prima facie case of discrimination because he filed the workers' compensation claim. As set forth in *Dollar General Partners v. Upchurch*, 214 S.W.3d 910, 915 (Ky.App.2006), a plaintiff can meet that initial burden of proof by establishing that: "(1) he engaged in a protected activity; (2) the defendant knew that the plaintiff had done so; (3) adverse employment action was taken; and (4) that there was a causal connection between the protected activity and the adverse employment action." *See also Brooks v. Lexington–Fayette Urban County Housing Authority*, 132 S.W.3d 790 (Ky.2004).

The question, as framed by the courts of this Commonwealth, is whether Johnson's filing of a workers' compensation claim was a substantial and motivating factor but for which he would not have been discharged. *See First Property Management Corp. v. Zarebidaki*, 867 S.W.2d 185 (Ky. 1993), and *Bishop v. Manpower, Inc. of Central Kentucky*, 211 S.W.3d 71 (Ky.App. 2006).

■ In the matter sub judice, Johnson filed a workers' compensation claim, an activity expressly protected under KRS 342.197. *See Overnite Transportation Company v. Gaddis*, 793 S.W.2d 129 (Ky. App.1990). Colorama was aware of the claim and accordingly, the first two elements of the cause of action were satisfied. Colorama asserts that it never terminated Johnson but instead kept him on the books and continued to pay his health insurance. Johnson asserts that he was terminated and that Colorama never put him back on the schedule. Colorama concedes that it never put Johnson back on the schedule.

Whether Johnson was terminated was a fact question, and one that, in this instance, was decided affirmatively by the jury. It is not for this Court to disturb the jury's factual finding in that regard, as we will not disturb findings of fact by a jury unless such findings are clearly erroneous. *See Blue Grass Restaurant Company v. Franklin*, 424 S.W.2d 594, 597 (Ky.1968), citing *Simons v. Allen*, 309 S.W.2d 775 (Ky.1958). As we do not find that to be the case here, the jury's finding of fact will stand, and we will consider Johnson to have satisfied the third element of the cause of action.

■ Colorama asserts that Johnson failed to satisfy the fourth element of the *Upchurch* test; namely, that he failed to prove a causal connection between the protected activity and the adverse employment action. Johnson was not required to demonstrate that the sole or even the primary reason for the termination was related to the protected activity, but only that its pursuit was a "substantial and motivating factor" in the decision to terminate. *See First Property Management v. Zarebidaki*, 867 S.W.2d 185 (Ky.1993). "In most cases, this requires proof that (1) the decision maker responsible for making the adverse decision was aware of the protected activity at the time that the adverse decision was made, and (2) there is a close temporal relationship between the protected activity and the adverse action." *See Brooks, supra* at 804.

Having reviewed the record below, we believe that Johnson presented sufficient evidence such that reasonable minds could resolve those two elements in his favor. Having so found, we believe that Johnson set forth a viable claim of employment retaliation. It was for the jury to decide whether that was so and whether Colorama effectively offered a legitimate, nondiscriminatory reason for the discharge.

*See Williams v. Wal–Mart Stores,* 184 S.W.3d 492 (Ky.2005).

In the instant matter, we believe that sufficient evidence existed for the jury to believe that Johnson was terminated in retaliation for seeking workers' compensation benefits, and we will not disturb that verdict on appeal.

Having so found, we do note that Colorama cites this Court to *Wymer v. JH Properties, Inc.,* 50 S.W.3d 195 (Ky.2001), in support of its argument that Johnson should have been unable to maintain this claim because he was unable to perform the work required. However, we find the matter sub judice to be distinguishable from *Wymer.* In *Wymer,* the court held that Wymer was terminated because she could not work and could not perform the essential job duties of *any* position in the hospital, with or without reasonable accommodation. *See Wymer* at 200–201.

In the matter sub judice, Johnson was released to return to work without restriction by Dr. Ballard, said he wanted to try to perform the work, and may have been able to assume a light duty position according to the testimony of Sparkman. We therefore find *Wymer* to be factually distinguishable and do not believe it serves as an adequate basis to overturn the verdict of the jury in this matter.

 Having found that the jury verdict should be affirmed, it follows logically that we affirm the court's denial of the motions for directed verdict made by the parties. The law is well established as to the standard of review to be utilized on appeal of a motion for directed verdict:

> The standard of review for an appeal of a directed verdict is firmly entrenched in our law. A trial judge cannot enter a directed verdict unless there is a complete absence of proof on a material issue or there are no disputed issues of

fact upon which reasonable minds could differ. Where there is conflicting evidence, it is the responsibility of the jury to determine and resolve such conflicts. A motion for directed verdict admits the truth of all evidence favorable to the party against whom the motion is made. Upon such motion, the court may not consider the credibility of evidence· or the weight it should be given, this being a function reserved for the trier of fact. The trial court must favor the party against whom the motion is made, complete with all inferences reasonably drawn from the evidence. The trial court then must determine whether the evidence favorable to the party against whom the motion is made is of such substance that a verdict rendered thereon would be "palpably or flagrantly" against the evidence so as "to indicate that it was reached as a result of passion or prejudice." In such a case, a directed verdict should be given. Otherwise, the motion should be denied.

It is well-argued and documented that a motion for a directed verdict raises only questions of law as to whether there is any evidence to support a verdict. While it is the jury's province to weigh evidence, the court will direct a verdict where there is no evidence of probative value to support the opposite result and the jury may not be permitted to reach a verdict based on mere speculation or conjecture.

*Rothwell v. Singleton,* 257 S.W.3d 121, 124 (Ky.App.2008), citing *Gibbs v. Wickersham,* 133 S.W.3d 494, 495–96 (Ky.App. 2004).

Having reviewed the record, we are in agreement with the court below that sufficient evidence existed for the jury to find that Johnson was terminated in retaliation for filing a workers' compensation claim. Certainly, we cannot conclude that John-

son failed to present any evidence of probative value in support of his claim. While the evidence may have been conflicting, it was for the jury to weigh the evidence and reach a conclusion. This, the jury did. Accordingly, a directed verdict would have been improper and the court below was well within its discretion in denying the motion made by Colorama in that regard.

Accordingly, having found that the jury verdict was proper, and further, having found that the court below properly denied the motions for directed verdict, we affirm the award of attorney fees and costs granted on Johnson's behalf. KRS 342.197(3) authorizes an award of attorney's fees and costs and it is our job on appeal to determine whether the court abused its discretion in making such an award. *See King v. Grecco,* 111 S.W.3d 877 (Ky.App.2002). There was no such abuse of discretion in the matter sub judice.

■ In any event, we note that on appeal, Colorama failed to name Johnson's attorney as a party to the appeal. Such failure will ultimately preclude our review, even if an abuse of discretion had existed in this instance. *See Louisville Label v. Hildesheim,* 843 S.W.2d 321 (Ky.1992), *Peabody Coal v. Goforth,* 857 S.W.2d 167 (Ky.1993), and *City of Devondale, Kentucky v. Stallings,* 795 S.W.2d 954 (Ky. 1990).

In light of the foregoing, having reviewed the record, the arguments of the parties, and applicable law, we affirm the February 11, 2008, judgment of the Floyd Circuit Court.

ALL CONCUR.