RENDERED: MARCH 18, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0296-MR
AND
NO. 2020-CA-0757-MR

JILL KERCELL                                              APPELLANT


APPEALS FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE SUSAN SCHULTZ GIBSON, JUDGE
ACTION NO. 19-CI-000129


NORTON HOSPITALS, INC.                                    APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: GOODWINE, TAYLOR, AND K. THOMPSON, JUDGES.

TAYLOR, JUDGE: Jill Kercell brings Appeal No. 2020-CA-0296-MR from a

January 29, 2020, order of the Jefferson Circuit Court granting summary judgment

in favor of Norton Hospitals, Inc. (Norton) and brings Appeal No. 2020-CA-0757-

MR from a May 4, 2020, order denying Kercell's Kentucky Rules of Civil

Procedure (CR) 60.02 motion. We affirm both appeals.

Kercell is a nurse and was employed by Norton for some sixteen years. Norton terminated Kercell's employment on October 30, 2018. A few months thereafter, on January 8, 2019, Kercell filed a complaint in the Jefferson Circuit Court against Norton. In the Complaint, Kercell alleged that Norton wrongfully terminated her employment and set forth claims under Kentucky Revised Statutes (KRS) 216B.165 and the common law. In particular, Kercell asserted:

> 4. That this action arises under Kentucky Revised Statute 216B.165 entitled "Duty to report quality of care and safety problems – investigation and report – Prohibition against retaliation," and that jurisdiction exists in this Court by virtue of the fact that [Kercell]'s damages exceed the minimum jurisdictional threshold of this Court.
>
> 5. That Norton operates a hospital under the assumed name Norton Brownsboro Hospital.
>
> 6. That [Kercell] was employed by [Norton] as a nurse manager at Norton Hospital Brownsboro.
>
> . . . .
>
> 9. [Kercell] was made aware of a number of patient safety concerns regarding the unsafe practices of Dr. Goldberg and other Northstar and Norton practitioners.
>
> 10. Upon information and belief, a large number of Patient Safety Reports were made by operating room personnel concerning the potentially unsafe conduct of Northstar anesthesiologist, Michael Goldberg, MD.
>
> 11. On or about July 26, 2018, [Kercell] received a

subpoena commanding her to produce documents in her possession related to patient safety concerns made about Dr. Michael Goldberg. The subpoena was in the case *Brewer v. Northstar Anesthesia*, 17-CI-4985.

12. On or about August 30, 2018, through Norton's counsel, [Kercell] gave a deposition and produced a series of emails related to patient safety concerns made by Norton and Northstar employees about Dr. Michael Goldberg's inability to safely practice medicine.

13. On or about October 30, 2018, four days after the *Brewer v. Northstar Anesthesia* case was resolved, [Kercell] was terminated from her employment with [Norton].

. . . .

## COUNT I
### (Wrongful Discharge)

. . . .

17. That [Kercell] was wrongfully suspended and then discharged pursuant to Kentucky statutory law and Kentucky Revised Statute 216B.165.

18. That [Kercell] engaged in activity specifically protected by KRS 216B.165 and was fired in retaliation and reprisal for complying with her legal duty to report and investigate the incidents as described in that statute and below.

. . . .

22. That [Norton] has subjected [Kercell] to unlawful reprisal, retaliation, and wrongful discharge for in good faith reporting, disclosing, divulging, and bringing to the attention of Norton, through her report and investigation, the circumstances and facts surrounding Dr. Goldberg

-3-

and other Norton and Northstar practitioners, in direct violation of KRS 216B.165(3), which reads:

> No health care facility or service licensed under this chapter shall by policy, contract, procedure, [sic] or other formal or informal means subject to reprisal, or directly or indirectly use, or threaten to use, any authority or influence in any manner whatsoever, which tends to discourage, restrain, suppress, dissuade, deter, prevent, interfere with, coerce, or discriminate against any agent or employee who in good faith reports, discloses, divulges or otherwise brings to the attention of the health care facility or service the circumstances or facts to form the basis of a report under subsection (1) and (2) of this section. No health care facility or service shall require any agent or employee to give notice prior to making a report, disclosure, or divulgence under subsections (1) or (2) of this section.

23. That [Kercell] was wrongfully terminated for in good faith reporting, disclosing, divulging, and bringing to the attention of Norton, through her report and investigation, the circumstances and facts surrounding Dr. Goldberg and other Norton and Northstar practitioners.

24. That the conduct of [Norton]'s agents, servants and employees, in retaliating against [Kercell] by terminating her as a result of her compliance with her statutory duties relative to patient safety concerns has the direct effect of discouraging, restraining, suppressing, dissuading, and deterring persons such as [Kercell] from making and/or forwarding patient safety concerns.

Complaint at 1-5. Kercell sought both compensatory and punitive damages.

Norton filed an answer and denied the allegations. Eventually, on November 22, 2019, Norton filed a motion for summary judgment. Norton argued that it terminated Kercell for permitting a subordinate employee to place a hidden camera in a patient area of the hospital in violation of the Health Insurance Portability and Accountability Act of 1996 and of Norton's policies. Additionally, Norton pointed out that Kercell stated that she was terminated for providing deposition testimony and documents in connection with a civil case between Jana Brewer, a former nurse anesthetist who worked at Norton, and her employer, Northstar Anesthesia (*Brewer v. Northstar Anesthesia*).[1] Norton argued that none of its employees, who were involved in Kercell's termination, were aware of the information Kercell provided in her deposition or the records she produced in connection with the ligation in *Brewer v. Northstar Anesthesia.* Norton also maintained that Kercell's deposition testimony and production of records did not constitute a "report" under the terms of KRS 216B.165; consequently, Norton believed that Kercell had not engaged in a protected activity under KRS 216B.165. Norton also contended that it possessed a legitimate reason for terminating Kercell – her own misconduct of allowing a subordinate employee to place a hidden camera in a patient area.

---

[1] *Jana Brewer v. Northstar Anesthesia*, Jefferson Circuit Court, Action No. 17-CI-4985.

In response, Kercell argued that she held a supervising position at Norton. In such position, she investigated and reported unsafe practices of Dr. Michael Goldberg. In particular, Kercell claimed that she reported concerns about Dr. Goldberg "through Norton's internal Patient Safety Reporting [PSR] system and by email." Moreover, Kercell stated that she gave deposition testimony in *Brewer v. Northstar Anesthesia.* Kercell claimed that she "testified that her direct subordinates had complained about Dr. Goldberg's actions," and she "reported the complaints to her supervisors." Response to summary judgment at 6. Kercell also maintained that in her deposition testimony, she testified as to patient safety complaints received by her in connection to Dr. Goldberg. Thus, Kercell asserted that she reported patient safety issues per KRS 216B.165 and engaged in protected activity thereunder. And, Kercell claimed that Norton's alleged reason for her termination was pretextual. Kercell argued that material issues of fact existed precluding summary judgment upon her claims of wrongful discharge under KRS 216B.165 and the common law.

By order entered January 29, 2020, the circuit court granted Norton's motion for summary judgment and dismissed the wrongful discharge claims against Norton. In rendering summary judgment, the circuit court was convinced that Kercell had not engaged in any protected activity under KRS 216B.165 and had otherwise failed to offer any facts supporting her common law wrongful

termination claim. The circuit court concluded that Kercell failed to raise a material issue of fact as to claims of wrongful termination.

Approximately one month later, on February 25, 2020, Kercell filed a CR 60.02 motion to vacate the January 29, 2020, summary judgment based upon newly discovered evidence. In support thereof, Kercell attached the affidavit of Mitchell Page, who was previously employed as a risk manager for Norton. According to the affidavit, Page "attended a meeting with Jeremy Rogers [an attorney] and Gracie Becht [human resources manager] in advance of our November 4, 2019[,] depositions." Page Affidavit at 1. At the meeting, Page averred that Becht stated, "she had been instructed not to fire Jill Kercell until after Jill had given her deposition in August 2018." Page Affidavit at 1.

While the CR 60.02 motion was pending, Kercell filed a notice of appeal from the January 29, 2020, summary judgment (Appeal No. 2020-CA-0296-MR). In a May 4, 2020, order, the circuit court denied Kercell's CR 60.02 motion. Kercell then filed a notice of appeal from the May 4, 2020, order denying the CR 60.02 motion (Appeal No. 2020-CA-0757-MR). Appeal Nos. 2020-CA-0296-MR and 2020-CA-0757-MR were consolidated by a July 20, 2020, Order of this Court. We will address each appeal *seriatim*.

Kercell contends that the circuit court erroneously rendered summary judgment dismissing her wrongful discharge claim under KRS 216B.165. Kercell argues that she had engaged in protected activity under KRS 216B.165:

> Jill held an "administrative or supervisory capacity" within Norton as the nurse manager. In this role, Jill was tasked with investigating and reporting to Norton the unsafe practices of Dr. Michal [sic] Goldberg and other Northstar providers. Jill received complaints about Dr. Goldberg and others, and she reported those concerns both the [sic] through Norton's internal Patient Safety Reporting (PSR) and by email to Norton and Northstar management.
>
> Jill testified in the Brewer case regarding the large number of patient safety concerns expressed by operating room personnel regarding the unsafe and unprofessional actions of Dr. Michal [sic] Goldberg and other Northstar personnel. . . . Jill did her best to address these concerns herself; she also reported the complaints to her supervisors. Jill's investigation and reporting, expressly included in KRS 216B.156(2) as a protected activity, defeats any argument that she [sic] Jill was not engaging in a protected activity.
>
> . . .
>
> Jill has been retaining emails and other memoranda in an effort to fully document the unsafe practices occurring in the Norton Brownsboro operating rooms. She expresses these concerns first in email, then via document production, and finally in deposition testimony. . . .

Kercell's Brief at 8-9 (footnotes omitted).

-8-

To begin, summary judgment is proper where there exists no genuine issue as to any material fact and movant is entitled to judgment as matter of law. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991); CR 56.03. All facts and inferences therefrom are viewed in a light most favorable to the nonmovant. *Steelvest*, 807 S.W.2d at 480. Our review proceeds accordingly.

The statute at issue, KRS 216B.165, provides, in relevant part:

(1) Any agent or employee of a health care facility or service licensed under this chapter who knows or has reasonable cause to believe that the quality of care of a patient, patient safety, or the health care facility's or service's safety is in jeopardy shall make an oral or written report of the problem to the health care facility or service, and may make it to any appropriate private, public, state, or federal agency.

(2) Any individual in an administrative or supervisory capacity at the health care facility or service who receives a report under subsection (1) of this section shall investigate the problem, take appropriate action, and provide a response to the individual reporting the problem within seven (7) working days.

(3) No health care facility or service licensed under this chapter shall by policy, contract, procedure, or other formal or informal means subject to reprisal, or directly or indirectly use, or threaten to use, any authority or influence, in any manner whatsoever, which tends to discourage, restrain, suppress, dissuade, deter, prevent, interfere with, coerce, or discriminate against any agent or employee who in good faith reports, discloses, divulges, or otherwise brings to the attention of the health care facility or

service the circumstances or facts to form the basis of a report under subsections (1) or (2) of this section. No health care facility or service shall require any agent or employee to give notice prior to making a report, disclosure, or divulgence under subsections (1) or (2) of this section.

(4) All reports, investigations, and action taken subject to this chapter shall be conducted in a manner that protects and maintains the confidentiality of patients and personnel and preserves the integrity of data, information, and medical records.

To establish a prima facie case of retaliation under KRS 216B.165, it is incumbent upon Kercell to demonstrate: (1) she engaged in a protected activity, (2) Norton knew about the protected activity, (3) Norton took an adverse employment action against her because of it, and (4) there is a causal connection between the adverse employment action taken by Norton and the protected activity. *See Colorama, Inc. v. Johnson*, 295 S.W.3d 148, 152 (Ky. App. 2009).

Under the plain terms of KRS 216B.165(1), an agent or employee of a health care facility who suspects "that the quality of care of a patient, patient safety, or the health care facility's or service's safety is in jeopardy shall make an oral or written report of the problem to the health care facility or service, and may make it to any appropriate private, public, state, or federal agency." KRS 216B.165(1) plainly requires the health care worker to make a report to the health care facility/service and may also make the report to an appropriate agency. And, under KRS 216B.165(2), an administrator or supervisor who receives such a report

-10-

shall investigate same, take proper action, and respond to the report. So, the protected activity contemplated by KRS 216B.165 is the giving of or contribution to an oral or written report concerning the quality of care or safety issue that is made to the health care facility and appropriate agency.

In its January 29, 2020, summary judgment, the circuit court concluded that Kercell had not engaged in a protected activity under KRS 216B.165:

> In Norton's First Set of Interrogatories and Request for Production of Documents, Interrogatory No. 18, it requested that Ms. Kercell 'identify all facts relating to her supporting Plaintiff's assertion that Defendant's conduct was "willful, wanton, oppressive, fraudulent, malicious and/or grossly negligent" as alleged in Paragraphs 26 and 36 of the Complaint.' In Ms. Kercell's answer to the interrogatory, she states, 'See complaint. Plaintiff was wrongfully discharged in retaliation for her testimony regarding the unsafe practices of physicians providing care at Norton Brownsboro.' (Kercell Resp. to Interrog. No. 18). Ms. Kercell acknowledged during her deposition that her discovery responses were true and accurate; and that, other than what she had already provided in discovery, she had no other documents which support her position in her lawsuit. (Kercell Dep. at p. 164). Ms. Kercell testified that she believes she was terminated in retaliation '[f]or telling the truth in a case: Jenna Brewer and Northstar.' (*Id.* at p. 160). Thus, Ms. Kercell's claims are primarily supported with affirmative evidence that she was retaliated against for testimony and provision of documents she provided during the Brewer case. As noted by Norton, Ms. Kercell's testimony and provision of documents during the civil case is not a protected activity under KRS 216B, since nothing in the

-11-

statute purports to apply to a healthcare employee giving a deposition or otherwise providing information to a private litigant pursuant to a subpoena in a civil case. In testifying in the civil case, Ms. Kercell was not making an oral or written report of the problem to the health care facility; nor, was she making it to any appropriate private, public, state or federal agency. Thus, it does not appear that the affirmative evidence Ms. Kercell offers in this case establishes retaliation under KRS 216B 165.

Memorandum and Opinion at 15-16 (footnotes omitted).

Considering the plain and unambiguous language of KRS 216B.165, we conclude, as did the circuit court, that Kercell's deposition and production of documents are not protected activities and as such, do not constitute a report to the healthcare facility or appropriate agency. Kercell's interpretation of KRS 216B.165 is overly broad and would have the effect of adding language to KRS 216B.165 that is clearly not intended by the legislature.

Kercell also claims that she engaged in a protected activity under KRS 216B.165 by receiving complaints about Dr. Goldberg, by reporting those complaints to Norton's internal PSR system and to her supervisors, and by investigating the complaints about Goldberg. To support these factual allegations, Kercell cites this Court to either her response to the motion for summary judgment or to the circuit court's January 29, 2020, summary judgment. To survive summary judgment, it is incumbent upon Kercell to create a material issue of fact as to whether she did, in fact, engage in protected activity.

Upon review of her response to summary judgment, Kercell again recites the same factual allegations, and in support, she cites to various depositions. However, Kercell failed to attach the pertinent depositions to her response, and we have been unable to locate same in the record. In fact, the record does not contain Kercell's deposition, as only selected portions favorable to Norton was attached to its motion for summary judgment. The record also does not contain a copy of any alleged reports produced by Kercell or documents given to Kercell in relation to safety concerns regarding Dr. Goldberg. Our review of the record reveals that Kercell failed to create a material issue of fact upon whether she engaged in a protected activity. Simply stated, Kercell has failed to set forth a prima facie case as to retaliation under KRS 216B.165, and the circuit court properly rendered summary judgment thereupon.

<u>APPEAL NO. 2020-CA-0757-MR</u>

Kercell contends that the circuit court erred by denying her CR 60.02 motion to vacate the January 29, 2020, summary judgment based upon newly discovered evidence and perjured or falsified evidence. Kercell claims that the affidavit of Page created a material issue of fact upon whether "Kercell's termination [was] related to the protected activity of reporting patient safety concerns." Kercell's Brief at 16. As we have previously concluded that Kercell failed to create a material issue of fact upon whether she engaged in a protected

-13-

activity per KRS 216B.165, it is simply irrelevant whether the affidavit created a material issue of fact as to a causal connection.

Additionally, we note that Page averred that Becht stated to him and Rogers that Becht was instructed not to terminate Kercell until after she gave her deposition. It is well-established that not all affidavits are "entitled to equal consideration or equal weight when considering a summary judgment." *House v. Deutsche Bank National Trust, as Trustee for Wamu Series 2007-HEI Trust*, 624 S.W.3d 736, 744 (Ky. App. 2021). In particular, "[a]n affidavit in support of a motion for summary judgment 'shall set forth such facts as would be admissible in evidence.'" *Id.* (quoting CR 56.05). Therefore, "an affidavit containing inadmissible hearsay statements is insufficient and cannot be considered on a motion for summary judgment." *Id.* It appears that Page's affidavit contains hearsay, and Kercell has not cited us to any exception to the hearsay rule that would permit its introduction into evidence.

We view any remaining contentions of error to be moot or without merit.[2]

---

[2] In her appellate brief, Jill Kercell did not raise any argument concerning dismissal of her common-law wrongful discharge claim.

In sum, we are of the opinion that the circuit court properly rendered summary judgment dismissing Kercell's wrongful discharge claim against Norton and properly denied her CR 60.02 motion.

For the foregoing reasons, we affirm Appeal No. 2020-CA-0296-MR and Appeal No. 2020-CA-0757-MR.

GOODWINE, JUGDE, CONCURS.

THOMPSON, K., JUDGE, CONCURS IN RESULT ONLY.

BRIEFS FOR APPELLANT:

James M. Bolus, Jr.
Louisville, Kentucky

Casey A. Krill
Louisville, Kentucky

BRIEF FOR APPELLEE:

Donna King Perry
Jeremy S. Rogers
Matthew Barszcz
Louisville, Kentucky