RENDERED: DECEMBER 22, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0096-MR

SABRINA HOBBS                                                  APPELLANT

APPEAL FROM FLOYD CIRCUIT COURT
v.      HONORABLE JOHN DAVID PRESTON, SPECIAL JUDGE
ACTION NO. 19-CI-00508

HIGHLANDS HOSPITAL
CORPORATION; CONSOLIDATED
HEALTH SYSTEMS, INC.;
APPALACHIAN REGIONAL
HEALTHCARE, INC.; ARH TUG
VALLEY HEALTH SERVICES, INC.,
D/B/A HIGHLANDS ARH REGIONAL
MEDICAL CENTER; ROBERT
NATHAN ROYALTY, MD; AND
HIGHLANDS ARH REGIONAL MEDICAL
CENTER ORTHOPEDIC SURGERY                          APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; CALDWELL AND MAZE, JUDGES.

MAZE, JUDGE:  Sabrina Hobbs has appealed from the Floyd Circuit Court's orders awarding summary judgment in favor of Highlands Hospital Corporation and Consolidated Health Systems, Inc. (collectively Highlands); Appalachian Regional Healthcare, Inc. and ARH TUG Valley Health Services, Inc. d/b/a Highlands ARH Regional Medical Center (collectively ARH); and Dr. Robert Royalty, MD.  Following a thorough examination of the record, we affirm.

In 2017 Hobbs was hired by Highlands as a Revenue Cycle Manager, responsible for the oversight of numerous clinics, including Dr. Royalty's orthopedic surgery practice.  Almost immediately she discovered what she perceived to be problems in that practice involving the conversion of patient records to electronic format and the proper documentation and reporting of patient visits.  She also expressed concerns about excessive patient volume.  She reported these issues to Vice President of Physician Services Todd Hightower and CEO Harold C. "Bud" Warman.  Highlands took corrective action.  Hobbs suffered no adverse consequences for making these reports.  In fact, she was promoted to Interim Vice President of Physician Services, a position that became permanent.  Her salary doubled.  She received raises and bonuses and her employment continued until July 31, 2019.

In late 2018 or early 2019, Dr. Royalty learned that Hobbs had discussed his compensation with other staff members, and that she had told them

he did not care about his staff or his patients, only money. Dr. Royalty lodged a complaint with CEO Warman. The three of them met to discuss the matter. Dr. Royalty specifically said that he did not want her fired. He merely wanted her to cease having a day-to-day presence in his practice. Another individual was then appointed to oversee the practice.

In 2019, ARH purchased Highlands with a final closing date of August 1, 2019. It inserted a transition team into the Highlands operations to conduct "due diligence." Hobbs assisted the team during that period, and she was extended a conditional offer of employment. However, upon observation, the members of the ARH transition team agreed that problems with the revenue cycle for the clinics for which she had oversight as well as unprofessional conduct with other executive level employees and overly familiar conduct with subordinates made her a poor fit for ARH. Therefore, on July 31, 2019, prior to the finalization of the purchase, the employment offer was rescinded.

On August 7, 2019, Hobbs filed suit, setting forth a claim pursuant to KRS 216B.165(3) for discrimination/retaliation against her based upon her complaints regarding issues of patient health. Initially, only Highlands was named as a defendant. Thereafter, on August 14, 2019, an amended complaint was filed adding ARH and Dr. Royalty. Count 1 reiterated her claim against Highlands. Count 2 alleged that ARH worked with Highlands to retaliate against her in

violation of KRS 216B.165(3). Finally, Count 3 set forth claims against Dr. Royalty for slander and interference with Hobbs' employment contract.

Following a period of extensive discovery Highlands filed its motion for summary judgment on June 2, 2021, arguing that since it had taken no adverse employment action against Hobbs, it could not be found to have retaliated against her pursuant to KRS 216B.165(3). On June 7, 2021, Dr. Royalty also filed a motion for summary judgment in which he argued that his only statement regarding Hobbs was made to CEO Warman. As such it was made within the employment context and therefore privileged and not subject to her claim of slander. He further contended that since Hobbs had no employment contract with ARH, he could not have interfered with it. Finally, on June 8, 2021, ARH filed its motion for summary judgment arguing that there is no cause of action for a retaliatory failure to hire in this Commonwealth, that KRS 216B.165 does not apply to a pre-employment relationship and that Hobbs is unable to show the requisite elements of retaliation. By order entered September 14, 2021, the trial court granted all three motions and this appeal followed.

**Standard of Review:**

Our review of an order granting summary judgment is *de novo*. *Keaton v. G.C. Williams Funeral Home, Inc.*, 436 S.W.3d 538, 542 (Ky. App. 2013). We conduct a thorough and searching examination of the record to

determine whether, when viewed as a whole, it shows that there is no genuine issue of material fact such that the movant was entitled to summary judgment. *Stilger v. Flint*, 391 S.W.3d 751, 753 (Ky. 2013). We do so without deference to the judgment of the trial court. *Jamgotchian v. Kentucky Horse Racing Commission*, 488 S.W.3d 594, 601 (Ky. 2016).

**Analysis:**

I.      *Highlands' Motion for Summary Judgment*:

KRS 216B.165 states that:

(1) Any agent or employee of a health care facility or service licensed under this chapter who knows or has reasonable cause to believe that the quality of care of a patient, patient safety, or the health care facility's or service's safety is in jeopardy shall make an oral or written report of the problem to the health care facility or service, and may make it to any appropriate private, public, state or federal agency.

. . .

(3) No health care facility or service licensed under this chapter shall by policy, contract, procedure, or other formal or informal means subject to reprisal, or directly or indirectly use, or threaten to use, any authority or influence, in any manner whatsoever, which tends to discourage, restrain, suppress, dissuade, deter, prevent, interfere with, coerce, or discriminate against any agent or employee who in good faith reports, discloses, divulges, or otherwise brings to the attention of the health care facility or service the circumstances or facts to form the basis of a report under subsections (1) or (2) of this section. No health care facility or service shall require

any agent or employee to give notice prior to making a report, disclosure, or divulgence under subsections (1) or (2) of this section.

To set forth a *prima facie* case of retaliation, a plaintiff must show that she engaged in a "protected activity," that her employer was aware that she took such action, and that she suffered "adverse employment action" as a result. *MacGlashan v. ABS Lincs KY, Inc.*, 84 F.Supp.3d 595, 599 (W.D. Ky. 2015) (quoting *Colorama, Inc. v. Johnson*, 295 S.W.3d 148,152 (Ky. App. 2009)). In considering the evidence in the light most favorable to the non-moving party, as required by *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky. 1991), Hobbs' initial report regarding the failure of Dr. Royalty's clinic to properly document patient care could be deemed to be a protected activity for purposes of retaliation analysis.

However, Hobbs is unable to demonstrate that she suffered any "adverse employment action" imposed by Highlands. There was no evidence that she was ever disciplined by Highlands. Indeed, by her own testimony, Hobbs continued to receive promotions, salary increases, and bonuses throughout her employment at Highlands. The record is replete with evidence of her rapid rise within the organization and there was ample evidence to support the trial court's conclusion that there are no genuine issues of material fact as to her claim of

retaliation. Highlands did not terminate her employment. It merely ceased to exist.

*II.* *ARH's Motion for Summary Judgment*:

The trial court found that while Hobbs may have made reports regarding patient safety to CEO Warman and Vice President Hightower of Highlands, she made no such reports to ARH and was not an employee of ARH at the time the reports were allegedly made. The court interpreted Hobbs' claim as one based upon a "retaliatory failure to hire." *Baker v. Campbell County Board of Education*, 180 S.W.3d 479, 484 (Ky. App. 2005). As such, no cause of action has been recognized as a matter of Kentucky's public policy.

Hobbs argued that she was, in fact, an employee of ARH by virtue of a letter dated June 17, 2019, offering her future employment with the company. However, that letter contained six different conditions that must be fulfilled before the contract would become effective. Most significant was the provision that it was "contingent" on the closing and finalizing of the acquisition of Highlands by ARH. It specifically stated that "Your start date will be effective the date of final consummation." That event did not occur until August 1, 2019. The offer to Hobbs was rescinded on July 31, 2019, based upon a joint determination by Trena Hall, Roy Milwee, and Sonya Bergman of ARH that, upon observation, she had performed poorly and conducted herself in an

unprofessional manner. Although the trial court made no specific findings in this regard, there was clearly enough evidence of record for the court to conclude that, because she had never become an employee of ARH, her only potential claim could be for a retaliatory failure to hire. Therefore, as a matter of Kentucky law, she had no cause of action against ARH.

III.    *Dr. Royalty's Motion for Summary Judgment*:

The trial court concluded that there were no genuine issues of material fact as to Hobbs' claim that Dr. Royalty slandered her since there was insufficient evidence other than rumors and speculation that he made any statement about her other than his report to CEO Warman regarding her breach of confidentiality. This statement, the court found as a matter of law, was protected by qualified privilege.

Slander is a subset of the broader tort of defamation. *Disabled American Veterans, Dep't of Kentucky, Inc. v. Crabb*, 182 S.W.3d 541, 547 (Ky. App. 2005). "The essential elements of defamation are: '(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.' RESTATEMENT (SECOND) OF TORTS § 558 (1977)." *Harstad v. Whiteman*, 338 S.W.3d 804, 810 (Ky. App. 2011). The Court therein noted that, where the statement concerns "unfitness to perform a job" there

need be no showing of malice, unless there is a claim of privilege. After the matter of privilege has been raised, the burden then shifts to the plaintiff to show that either it does not apply or that it was abused. Under such circumstances, a showing of actual malice is required. *Id*. at 810.

"Abuse of the qualified privilege may be shown in several ways, some indicating ill will or maliciousness more directly than others. These include: (1) the publisher's knowledge or reckless disregard as to the falsity of the defamatory matter; (2) the publication of the defamatory matter for some improper purpose; (3) excessive publication; or (4) the publication of defamatory matter not reasonably believed to be necessary to accomplish the purpose for which the occasion is privileged." *Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 284 (Ky. 2014) (internal quotation marks omitted) (quoting RESTATEMENT (SECOND) OF TORTS § 596 cmt. A (1977)). The Court stated that "[t]o defeat a summary judgment or directed verdict motion, a party must, in essence, present the same amount of proof required if there was no privilege." *Id.* at 285.

CEO Warman testified that Dr. Royalty complained to him that Hobbs had violated a trust and that he no longer trusted her to be involved with his practice, but that he did not want her to be fired. Dr. Royalty indicated to him that he was personally hurt that she was talking about his salary to other doctors and staff members. Karen Sellers, CEO Warman's assistant, testified that she took Dr.

Royalty's initial complaint and made notes. She also confirmed that Dr. Royalty was concerned about the disclosure of his salary and the statements that Hobbs had allegedly made regarding his lack of care for patients and staff.

Dr. Royalty testified that he informed CEO Warman that she told his staff about his salary and said that he didn't care about his staff or his patients, only money. He stated that Beth Boyd told him about Hobbs's statements, but that Matt Blanton, Stephanie Ramey, LaShay Reed,[1] and others knew about them. Beth Boyd's affidavit confirmed this testimony.

Hobbs cited Sellers' notes in support of her argument that Dr. Royalty used his influence to force the hospital to terminate her employment. Although those notes certainly demonstrate Dr. Royalty's anger regarding Hobbs' disclosure of his salary and her comments about his feelings towards his staff and his patients, they do not indicate that he ever attempted to force either Highlands or ARH to terminate her employment. "The party opposing summary judgment cannot rely on their own claims or arguments without significant evidence in order to prevent a summary judgment." *Wymer v. J.H. Properties, Inc.*, 50 S.W.3d 195, 199 (Ky. 2001) (citing *Harker v. Federal Land Bank of Louisville*, 679 S.W.2d 226 (Ky. 1984)).

---

[1] Boyd, Blanton, Ramey, and Reed were all employees of Dr. Royalty's clinic.

The trial court also found that there are no genuine issues of material fact as to Hobbs' claim of interference with her contractual relationship with ARH. As set forth elsewhere herein, Hobbs clearly had no such relationship. Therefore, she would be unable to establish the remaining elements of the tort as set forth in *Snow Pallet, Inc. v. Monticello Bank Company*, 367 S.W.3d 1 (Ky. App. 2012).

Even had there been evidence of contract formation, there was ample evidence to demonstrate that either Dr. Royalty had no knowledge of the contract or had no intent to cause a breach of the contract. His testimony was that he never informed anyone at ARH about his complaints regarding Hobbs. Trena Hall of the ARH transition team testified that she never talked to Dr. Royalty about Hobbs and does not know if anyone else did. Matt Blanton's affidavit also confirmed that he never heard Dr. Royalty issue any "ultimatum" to ARH regarding Hobbs' termination.

Because we find no genuine issue of material fact regarding the claims set forth in Hobbs' amended complaint, the summary judgments of the Floyd Circuit Court are affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Earl M. McGuire
Prestonsburg, Kentucky

BRIEF FOR APPELLEES:

Laura L. Mays
Gregory A. Jackson
Lexington, Kentucky